N. Y., N. H. & H. R. R. Co. *vs.* Patrick Horgan.

NEWPORT—OCTOBER 23, 1903.

Present: Tillinghast, Douglas, and Dubois, JJ.

(1)   *Tide-Flowed Lands.   Public  Waters.   Rights of  State and  Town in*
*same.   Ejectment.*

In Rhode Island, the title to land below high-water mark was in the crown until the State became independent, and since that time all the power of king and parliament with respect to these lands has resided in the General Assembly.

The grant in the charter of 1663 was ample to endow the colony with full dominion over the shore and tide-flowed land within the boundaries of the territory granted; so that, acting by the express authority of the crown, the colonial General Assembly had good right to regulate the use and improvement of such lands.

By statute passed in 1707, the General Assembly granted to the several towns these powers, including the power to "lay out lots."

At a quarterly meeting of the freemen of Newport, in 1739, the town conveyed a portion of such tide-flowed land to parties from whom defendant derived his title.

Plaintiff derived title by mesne conveyances from a deed from the city of Newport in 1863, made in execution of the power granted to the city by an act of the General Assembly passed in 1860, but which excepted from the operation of the deed any private rights included within the lands described:—

*Held*, that the land was private property at the time of such last-mentioned grant, and hence was not included in the grant.

Trespass and Ejectment.   Heard on petition of defendant for new trial, and petition granted.

Douglas, J.   The plaintiff sues in an action of trespass and ejectment to recover possession of a certain lot of land, occupied by the defendant, which lies northerly of long wharf in Newport, and was formerly covered by tide water.   At the hearing of the case in the Common Pleas Division the presiding justice directed a verdict for the plaintiff.   A new trial is asked by the defendant on the ground of alleged error in the exclusion of evidence and in the direction of the verdict, and also on the ground of the discovery of new and convincing evidence in favor of the defendant's title.

The plaintiff's title is based upon a deed from the city of Newport to the Newport & Fall River Railroad Company, dated March 4, 1863, which included within the general boundaries of the land the lot now in question, but which excepted from the operation of the deed any private rights which were included in the land described.   This deed was made in execution of the power granted to the city of Newport by an act of the General Assembly passed at the May session, 1860, entitled "an Act in relation to the Public Waters in the City of Newport," as amended by an act passed at the January session, 1862.   The deed was expressly ratified by an act passed at the May session, 1863, and this likewise contains the following: "Provided, however, that this act shall not be construed to authorize said company to take the private property of any person or corporation (other than said city) in any other manner than by law or their charter is provided." The plaintiff further showed mesne conveyances, under which it now holds the estate conveyed by the deed of the city, and introduced evidence to show that at the time of the making of that deed the land in dispute was covered by tide water. The *prima facie* title of the plaintiff was thus complete and the burden was thrown upon the defendant to show that the right of the State in this tide-flowed land has been extinguished; or, in other words, that the title to this land was held by private persons at the time of this grant, and so that the land was excepted from the general description.

The defendant offered in evidence the record of a quarterly meeting of the freemen of Newport, held on the first Wednesday of October, A. D. 1739, at which meeting a vote was passed as follows:

"At a Quarterly Meeting of the Freemen of the Town of Newport, in the colony of Rhode Island, etc., mett the first Wednesday of October, A. D. 1739.

"*Whereas*, Henry Collins, Samuel Rodman, Henry Bull, Clark Rodman, Joseph Jacob, Samuel Wickham, William Read, Thomas Potter, Nathaniel Coddington and Samuel Collins, all of Newport, aforesaid in behalf of themselves and their associates, Have petitioned this meeting for a grant of

the space of land between the land of Catharine Sheffield and the land of Benjamin Durfey, for a wharfe with that width over to the Point and from thence westerly into the salt water, etc., including the Town Wharfe, they agreeing with ye proprietors of said wharfe, etc.

"This meeting having taken said Petition into consideration and being sensible of the advantage it will be to the Town in general as also a great ornament to the same, which will arise by and at ye great expense of the Petitioners and their associates,

"Do Vote, and Enact, and hereby grant, convey, and confirm, unto the said Henry Collins, Samuel Rodman, Henry Bull, Clarke Rodman, Joseph Jacob, Samuel Wickham, William Read, Thomas Potter, Nathaniel Coddington, and Samuel Collins and their associates and their heirs and assigns forever, all that piece or parcel of land in Newport aforesaid, called the Town Wharf, with all the space of land between ye lands of Katharine Sheffield and the land of Benjamin Durfey, and extending from Thames street, westard across the cove or flatts to the Sandy point called Easton's point and across the Point eight-hundred feet westard into the water towards Goat Island from low water mark, together with the privileges of all the rights the said town of Newport hath in ye water on ye north side of the premises, forty-five feet in width on each side, they, the said Petitioners and their Associates agreeing with the proprietors of the said town wharfe, and those persons who own ye lots on Sandy Point, through which the premises will extend and as soon as they can with conveniency to build on the premises a good and substantial wharfe of fifty feet wide, extending from Thames Street, to the western limits aforesaid, leaving a channel for the passage of boats into the cove with a good convenient Drawbridge and always leaving thirty feet in width of the said wharfe on the south side free and clear of all Buildings and other encumbrances for the better landing of all sorts of wood, lumber, etc., for ye benefit of ye Inhabitants according to ye grant in ye year 1702. Excepting ye building of Crands (cranes ?) etc., for conveniency of unloading vessels, etc. *To Have and to Hold,* all the above granted

premises with all and singular the rights, profits, privileges, and appurtenances to ye same belonging or in any wise appertaining (upon ye conditions above specified), to them the said Henry Collins, Samuel Rodman, Henry Bull, Clarke Rodman, Joseph Jacob, Samuel Wickham, William Read, Thomas Potter, Nathaniel Coddington, Samuel Collins, and their associates, and their heirs and assigns forever,

"Test William Coddington, Jr.
·"Dep. Town Clerke,

"Recorded in the Quarter Meeting Book of Newport, No. 2 page 519, 520, The 29 day of October, 1739.

"Past at ye Quarter Meeting ye 3d October, 1739. Test W. Coddington, Junr. Dept. Towne Clerk.

"W. Coddington, Jr.
"Depy Clk."

After deliberation the court excluded the record of this vote, on the ground that the town of Newport had no power to grant title to land flowed by tide water—the title to such lands being originally in the king, and the power to control them having· been delegated to the General Assembly by the charter of 1663, and the defendant excepted to the ruling. The defendant offered further documentary evidence to show that the persons named in this vote organized and held meetings and divided amongst themselves and their associates the wharf and lands adjacent to it, and by certain officers conveyed these lots to individuals from some of whom the defendant derives title to the land in question.

All this evidence was excluded, and the court finally directed a verdict for the plaintiff.

It is plain that the ruling of the court was right upon the evidence as it stood.

(1)   It has been repeatedly held in this State that the title to land below high-water mark was in the crown until the State became independent, and since that time all the power of king and parliament with respect to these lands has resided in the General Assembly. *Bailey* v. *Burges*, 11 R. I. 330; *Clark* v. *City of Providence*, 16 R. I. 337; *Murphy* v. *Bullock*, 20 R. I. 35.

The grant in the charter was ample to endow the colony with full dominion and royalty over the shore and tide-flowed land within the boundaries of the territory granted; so that, acting by the express authority of the crown, the colonial General Assembly had good right to regulate the use and improvement of this portion of their domain. Angell on Tide Waters, 37; *Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56, 69.

The assumption of such rights by the towns or the occupation of these lands by private individuals without authority from the king or his colonial government were mere usurpations suffered without protest, it may be, but out of which no right could grow. But, unfortunately for the plaintiff's case, the General Assembly of the colony, in 1707, by a statute which was inexplicably overlooked by counsel on this trial, saw fit to grant these very powers to the several towns. This law provides as follows:

"Be it enacted by the Honorable Governor and Council and house of representatives convened in General Assembly and by authority of the same it is enacted that each town in this colony now established, or that may hereafter be established, may be, and have granted unto them full power and authority to settle such coves, creeks, rivers, waters, banks bordering upon their respective townships, as they shall think fit for the promotion of their several towns and townships, by building houses and warehouse, wharfs, laying out lots or any other improvements, etc., as the body of freeholders and freemen of each town shall see cause for, or the major part of them for their most benefit, not prejudicing any particular person in their proper original grants or purchases upon any the aforesaid harbors, coves, creeks, etc., which we doubt not but will much promote the interest of Her Majesty and the good of her good subjects in said colony for the promoting of trade and navigation." IV. Col. Rec. 24.

It is true that the mere establishment of a harbor line does not convey the title of the State until the riparian owner fills in and reclaims the land under the license thus given. *Engs* v. *Peckham*, 11 R. I. 210; *Aborn* v. *Smith*, 12 R. I. 370; *Gerhard* v. *Bridge Commissioners*, 15 R. I. 334.

But the colonial law gave power to the towns to "lay out lots," and the deed from the town of Newport laid out and gave to the proprietors of the wharf the tide-flowed land for a wharf, and to a line forty-five feet northerly of the same.

(2)   The evidence shows that at the place where the bridge was, which we understand to be the location of the lot now in dis-pute, a channel was kept open from the harbor into the cove. This was a servitude imposed upon this portion of the land granted. The title passed to the grantees subject to this burden that the bridge should be maintained and the water permitted to ebb and flow under it. When by the later act of the General Assembly the plaintiffs were permitted to fill up the cove, the easement ceased and the owner of the land was able to enjoy it without the burden.

Taking into account, then, the law of 1707, we find that the land in question was private property at the time of the grant to the plaintiff's predecessor, and hence was not included in the grant. The plaintiff's title therefore fails, and the questions concerning the defendant's title become immaterial.

. The principal contention with regard to the defendant's claim was that the original proprietors, though not incorporated, could and did make valid conveyances of their lots by the deed of their treasurer. The new-evidence which the defendant has discovered since the trial, and which will be available if the case is tried again, may make the status and powers of these proprietors more certain; but whether the defendant has good title to the land or not, he is in possession of it, and the plaintiff has not shown that it belongs to it. Hence a new trial must be granted, and a further discussion of the questions raised would now be idle.

*William P. Sheffield, Jr.,* for plaintiff.

*Frank F. Nolan,* with whom was *Amasa M. Eaton* on petition for new trial, for defendant.