At the trial of this case in the Common Pleas Division a verdict was directed for the plaintiff for the land described in the declaration.
It was contended by the defendant that this land was not embraced in the grant by the State to the Newport and Fall River Railroad Company, which was the predecessor in title of the plaintiff, because it had previously been granted to the Long Wharf Association by vote of the town of Newport. The authority of the town to pass this vote was questioned at the former trial, and the objections to it were considered in our opinion reported.25 R.I. 408.
The objection now raised is to the admissibility of the evidence by which the vote of the town is sought to be proved. *Page 449 
This evidence consists of a copy, duly certified by the city clerk, of an extract from a book entitled "Copied Land Evidence, Volume I," the extract purporting to be a vote of the freemen of the town of Newport, passed at a meeting held the first Wednesday in October, October 29th, 1739.
The plaintiff excepts to the admission of this evidence, on the ground that the book from which the copy was made is itself a copy not sufficiently authenticated as a public record.
It is an historical fact that the British forces occupied the town of Newport during a part of the Revolutionary War, and that when they evacuated Newport in 1779 they carried away with them the records of the towns of Newport and Middletown. The vessel they were in was sunk in Long Island Sound, near Hell Gate. The General Assembly passed a resolution at the December session, 1779, requesting Governor Greene to write to General Washington to use his influence with General Clinton, in command of the British forces, to return these records, v. 8, Col. Records, 641, 642, and they were subsequently returned, but in a dilapidated condition.
A resolution of the city council of Newport, passed November 20, 1855, is as follows: "Whereas, The Records of the Town of Newport previous to the Revolutionary War are now in the City Clerk's office in a dilapidated condition, and are daily wasting away and will finally all disappear, by handling, and no record will be left of the early proceedings of Newport;
"Therefore, Resolved, That the subject matter thereof be referred to the Committee on City Property for their consideration, whether it would not be advisable to have them copied as far as it can be done, and what would be the expense thereof."
There is no official record of the action of the committee, but it appears from the evidence that some, at least, of these records were copied into books and deposited in the city clerk's office and now remain there, and are used instead of the original records for public reference. The remains of the original records of the colonial and Revolutionary period have been placed in the hands of the State Record Commissioner, who is engaged in the work of preserving and restoring them. He *Page 450 
was called as a witness in this case, and testified that they contain no record of the town meeting of October 29, 1739.
There was further evidence tending to show that the book now in the city clerk's office was copied from the original records in 1857, under the supervision of the town clerk, who is now dead. It has been used as the only available record of the proceedings to which it relates for nearly fifty years, and we think every presumption should be made in favor of its correctness.
In these circumstances, we are of the opinion that the presiding justice properly admitted the certified copy of the vote as being taken from a recognized public record.
In the trial of the former petition for a new trial in this court, our attention was not called to the fact that the lot which defendant occupies extends northerly of a line forty-five feet north of the old long wharf, by which line the grant from the town of Newport was bounded. As to that portion of the land, the former opinion does not apply, and the plaintiff is apparently entitled to possession of it. The declaration, however, does not clearly include any land north of the line laid down in the grant. It begins at the long wharf and runs northerly to "other land of the plaintiff," without stating the distance.
To conform the declaration to the evidence in the case and the issue between the parties, it should be amended by defining the length of the easterly and westerly lines of the lot of land intended to be claimed, and judgment should be entered for the plaintiff for possession of so much of said lot as lies northerly of a line north of and parallel to the northerly line of long wharf, and forty-five feet therefrom. The plaintiff, however, should not be allowed costs, as we have found the defendant entitled to the greater part of the land in dispute.