JAMES A. FARQUHAR *vs.* CANADA-ATLANTIC AND PLANT STEAMSHIP COMPANY, LTD.

Suffolk.   January 8, 1912. — June 18, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DeCOURCY, JJ.

*Corporation*, Dividend, Promoter's agreement. *Contract.*

An agent of promoters of a corporation purchased all the corporation's capital stock and part of its property, and as payment received the promoters' notes, retaining the stock as security, and the agent and the promoters became the controlling stockholders of the corporation. They then doubled the capital stock of the corporation, one half of the increase being given to the agent for

further security for the payment of the promoters' notes, and substantially all the rest of the increase being given to a trustee to be held by him subject to an agreement between the promoters and the agent which in part provided that the promoters should manage the business of the corporation and should apply its net earnings monthly toward payment of their notes to the agent, and that, after those notes were paid, the stock should be distributed as the promoters might agree. A dividend was declared by the corporation, and on demand of the agent it was paid to him by the treasurer of the corporation in performance of the agreement between the agent and the promoters. Over a year previous to the declaration of the dividend one of the promoters had borrowed a sum of money from one to whom he promised to assign as collateral security all interest which he might obtain in the corporation or its stock, and two years and three months after the dividend had been paid to the agent certain shares of stock in the corporation and all dividends due thereon were assigned at such promoter's request by the trustee above described through others to the promoter's personal creditor. Over three years later the assignee demanded the payment to him of the dividend above described, and, payment being refused, brought an action against the corporation therefor. *Held,* that by their agreement the promoters, including the plaintiff's assignor, had appropriated the dividend in question with the rest of the corporation's net earnings to the payment of their notes to the agent; that, although the corporation had not assented to the agreement formally, it had not prevented its being carried out by the payment of the dividend to the agent, and that it was too late for the plaintiff's assignor or any one claiming under him to contend successfully that he was entitled to the dividend.

MORTON, J. The defendant company is a Canada corporation, and on September 20, 1904, declared a dividend of six and a quarter per cent on its capital stock, payable October 1. This is an action to recover $750, the amount of the dividend on one hundred and twenty shares of stock. The case was tried by a judge * without a jury. The judge found for the defendant and the case is here on exceptions by the plaintiff to the finding and to the refusal of the judge to give certain rulings that were requested.

The plaintiff was not the owner or holder of the stock at the time that the dividend was declared, and did not become a holder or owner of it until on or after January 15, 1907. He claims through an alleged assignment to him of the dividend made September 1, 1910, by one McIlreith at the request of one Charles E. Pye. On June 5, 1903, Pye and others, whom we shall call the promoters, entered into an agreement with one Perry, whereby Perry purchased in their interest the entire capital stock of the defendant company, then consisting of two thousand shares of the par value

---

* *McLaughlin,* J.

of $100 each, and certain real estate and wharf property in Halifax occupied by the defendant company. The promoters gave their notes to Perry for $285,000, payable in one year, Perry retaining the stock as security therefor. As part of the scheme the capital stock was increased from two thousand shares to four thousand shares, and bonds to the amount of $300,000 were issued. One thousand shares of the increase were issued to Perry as additional collateral security for the notes given to him by the promoters, and the bonds were deposited by him with the International Trust Company as mortgagee and trustee with liberty to the promoters to sell the same or any part thereof and have the proceeds applied towards the payment of their notes to Perry. The remaining one thousand shares, less seventy shares issued to the directors and one hundred and twenty shares issued to G. B. Bussey and James A. Young, were placed in the hands of McIlreith in trust for the benefit of the promoters and for other purposes set out in the trust agreement. The one hundred and twenty shares conveyed to the plaintiff constituted a part of the eight hundred and ten shares thus left in the hands of McIlreith, and were shares to which Pye was entitled according to the agreement between him and the other promoters. They were transferred on December 12, 1906, by McIlreith, at the request of Pye, to Frederick J. Dagget, and by him, on January 15, 1907, at Pye's request, were transferred to the plaintiff. The agreement between Perry and the promoters provided amongst other things that the management of the steamship company should be undertaken by the promoters and that they should deposit monthly with the International Trust Company all the net earnings of the steamship company and that the net earnings should be applied monthly towards the payment of the notes given by them to Perry. Upon payment to Perry in full at any time within one year of the notes aforesaid, he was to transfer to the promoters the stock and bonds, or so much thereof as remained unsold, in such proportions as they might agree upon. At the time when this agreement was entered into the promoters and Perry constituted all of the stockholders except the four Canadian stockholders holding ten shares each as required to qualify them as directors. Perry claimed that under the provisions of the agreement relating to the application of the net earnings he was entitled to the dividend that

was declared, and the same was paid over to him by the treasurer of the company. Perry had previously, in September, 1903, while acting as treasurer of the company, drawn $25,000 from the company without any formal vote on the part of the directors or the executive committee, of which he was one, though with the assent of the other two members of the committee, and applied it towards the payment of the notes held by him. Shortly before September 20, 1904, under the advice of counsel, he returned to the company the amount so drawn. It appeared that on or about June 1, 1903, the plaintiff lent Pye $5,000, taking his notes therefor, and that Pye promised the plaintiff that he would assign to him as collateral security therefor any and all interests which he might obtain in the company or its stock. It could be found, if material, that Pye procured the transfer of the one hundred and twenty shares and the assignment of the dividend to be made to the plaintiff pursuant to the promise thus given by him to the plaintiff. So far as appeared no demand for the payment of the dividend in suit or claim to the same was made by Pye or any one representing him, until September 7, 1910, shortly before the date of the writ. There was nothing to show that any objection was made by Pye or any one representing him to the payment to Perry of the dividend that was declared in September, 1904.

We think that the ruling and finding in favor of the defendant were right. The agreement between Perry and the promoters operated so far as the promoters were concerned, as an appropriation and assignment of their interest in the net earnings of the company to the reduction of their indebtedness to Perry. If any of the net earnings belonging to them were not so appropriated, they would be liable in damages to Perry for the breach of their contract and the damages recovered would be the amount of net earnings that were not so appropriated. Although the company did not formally assent to the appropriation and assignment, that did not prevent the agreement from taking effect as between the parties to it, and, payment having been made by the company to Perry in accordance with the terms of the agreement without objection, it is now too late for Pye or one claiming under him as the plaintiff does, to contend successfully that he is entitled to the dividend. What effect, if any, the agreement would have upon the rights of other stockholders it is not necessary to con-

sider. As between the parties to it we see nothing illegal in the agreement. The rulings requested * were rightly refused except so

* The requests for rulings which were refused except so far as stated as to each one, were as follows:

"1. On all the evidence judgment should be entered for the plaintiff in the sum of $1023.60, being the amount of the dividend with interest to date.

"2. On all the evidence judgment should be entered for the plaintiff in the amount of $781.83, being the amount of the dividend with interest from date of demand.

"3. On all the evidence judgment should be entered for the plaintiff in the amount of $781.83, being the amount of the dividend with interest from the date of the writ.

"4. Money earned by a corporation is corporate property and not the separate property to the stockholders, unless and until distributed among them by the corporation. [This request was given.]

"5. The members of a corporation have no right to contract among themselves as individuals as to the disposal of the net earnings of the company.

"6. At the time of the agreement of June 5, 1903, the parties of the second part were not stockholders in the corporation and could not lawfully contract as to the disposal of its earnings.

"7. The agreement of June 5, 1903, in so far as it attempts to dispose of the net earnings of the corporation is illegal and of no effect.

"8. The agreement of June 5 is an illegal agreement in that it attempts to dispose of the earnings of the Canada-Atlantic and Plant Steamship Company by a personal agreement among persons not yet stockholders and it is of no effect as far as this case is concerned.

"9. Granting that the agreement of June 5, 1903, was not illegal, it expired one year from its date.

"10. Granting that the said agreement of June 5, was not illegal, it means that if the notes of said Perry were paid in full in or within one year from its date then the said Perry should transfer to the parties of the second part in such proportions as they may agree upon the shares of capital stock held by him and any of the bonds in his possession, and if said notes were not paid in full, the shares of the capital stock and the bonds remaining in his possession should belong to the said Perry free and clear of any claims of the parties of the second part and there would be no liability on the notes referred to therein.

"11. The agreement of June 5, 1903, had no effect on the dividend which was declared on September 20, 1904.

"12. McIlreith, the assignor of the plaintiff in this case, was the owner of the stock on October 1, 1904, and was entitled to the dividend made payable on that day.

"13. The assignment made by the said McIlreith and sued on in this case is valid and carries the dividend which was made payable on October

far as granted. There is nothing in the contention that the agreement did not warrant the application of the earnings to the payment of the notes after the end of the year, or in the contention that the dividend belonged to McIlreith. He held the one hundred and twenty shares for the benefit of Pye and it was for Pye to say so far as these shares were concerned how the earnings or dividends should be disposed of.

*Exceptions overruled.*

*J. E. Young,* for the plaintiff.
*W. M. Richardson,* for the defendant.

———

1, 1904." [As to this request the judge stated: "The thirteenth request is granted so far as it purports to allege the validity of the assignment; the request that the assignment carried the dividend is denied."]