NEW JERSEY CAR SPRING AND RUBBER COMPANY. APPELLANT, v. ADRIANA S. FIELDS, EXECUTRIX OF JOHN J. FIELDS, RESPONDENT.

Submitted July 7, 1913—Decided November 17, 1913.

The decedent was the owner of three thousand nine hundred and eighty-five shares out of four thousand of the capital stock of a corporation and the beneficial owner of the remaining fifteen shares; he had transferred one thousand shares to his son, and then in 1902 transferred the rest of his stock to his son and grandson except five shares which he retained and transferred in 1904; he had been receiving from the corporation six per cent. on the entire capital stock; at the time of the transfer in 1902, the directors of whom he was one, voted to pay him $12,000 during his natural life; he ceased to be connected with the company in 1904, but the $12,000 was paid him annually for several years; his son and grandson continued to hold the stock and to control the company and checks for the annuity were signed by them; after decedent's death suit was brought to recover the amount that had been paid him. *Held*, that a judgment for the defendant was proper.

On appeal from the Supreme Court.

John J. Fields, the decedent, at one time owned three thousand nine hundred and eighty-five shares out of four thousand of the stock of the plaintiff corporation. The other fifteen shares also really belonged to him, but stood in the name of other directors of the company. On December 29th, 1900, he transferred five hundred shares to his son John J. Fields, Jr.; on July 15th, 1901, he transferred five hundred more; and on July 15th, 1902, one thousand nine hundred and eighty-five shares more. The same day he transferred one thousand shares to his grandson, Townsend Cox. John J. Fields, Jr., became president of the company and Townsend Cox, treasurer. In July, 1902, Charles P. Cox, a director, gave up his five shares to the younger Fields; and on January 18th, 1910, Henry H. Butts gave up his five shares. The elder Fields held five shares until 1904, when he gave them up and resigned as director. Previous to his transfer of his stock the elder Fields had been receiving six per cent. on the par value by way of dividends, in addition to other profits of the business. On July 15th, 1902, Charles P. Cox resigned as director and treasurer, and a resolution was adopted by all the directors (of whom the elder Fields was one) except Charles P. Cox, agreeing to pay the elder Fields annually and during his natural life a sum equivalent to three per cent. on capital stock invested. Thereafter $12,000 a year was paid to the elder Fields, the checks were signed by the younger Fields as president and by Townsend Cox as treasurer. At one time, shortly prior to his father's death, the younger Fields objected to the payment and suggested a doubt as to its legality. The payment was nevertheless continued. The company treated these payments upon its books as interest on investment. It has continued to pay dividends in addition upon the stock. There is no suggestion that the rights of creditors are in any way involved. The elder Fields was a very old man and did no work for the company after 1904.

For the appellant, *Vredenburgh, Wall & Carey.*

For the respondent, *Willard W. Cutler.*

The opinion of the court was delivered by

SWAYZE, J.   This action is to recover money paid the decedent, upon the theory that the contract of July 15th, 1902, was void since the decedent as director was contracting with himself.   *Gardner* v. *Butler,* 3 *Stew. Eq.* 702, is relied on.

The case, however, differs from Gardner *v.* Butler in several respects—*first,* the contract was assented to by all the stockholders who were also all the directors; *second,* the payments were continued for more than six years after the elder Fields had ceased to be a director or stockholder; *third,* the plaintiff corporation, controlled as it was by those who still control it, never repudiated the transaction until after the death of the elder Fields.   The case of the defendant might therefore be rested upon the right of the stockholders as distinguished from the directors to make or to ratify the contract (*United States Steel Corporation* v. *Hodge,* 19 *Dick. Ch. Rep.* 807), or upon their acquiescence in what was done (*Breslin* v. *Fries-Breslin Co.,* 41 *Vroom* 274), or upon the long delay in acting (*Lilland* v. *Oil, Paint and Drug Co.,* 4 *Robb.* 197, 210).   But inasmuch as the payment was on the face of it and in form a mere gratuity, or at best a pension to the man who seems to have built up the company, it may be well to examine a little further its real character, for the purpose of showing the fairness of the whole transaction to the stockholders who now seek to question it and recover the money. Mr. Fields had been receiving six per cent. on $400,000, the entire capital stock.   He had already given one thousand shares to his son, and was about to give him two thousand more, and to give the grandson the remaining one thousand. He was about to strip himself of the whole capital stock without consideration.   As a part of the transaction, and evidently by way of partial payment, the son and grandson, in effect, agreed to pay him three per cent. on the amount during his life, which, at best, could last but a few years.   They might have put the agreement in the formal shape of a contract by them as individuals to pay the annuity.   They might then as

stockholders have received dividends from the company and out of the money paid their obligation to the decedent. They sought to accomplish the same object by a short cut—by having the corporation pay him directly. The practical effect was the same. Their dividends were necessarily that much less. In the absence of any claim of creditors, we see no legal objection to their accomplishing the object as they did, as long as every one acquiesced. To hold otherwise would enable them to retain the stock without paying the price agreed upon. There was no fraud, and although this method of paying a dividend to the nominee of the stockholders instead of paying it directly to the stockholders is irregular, it is not *ultra vires,* and there is no minority of the stockholders to suffer thereby. The irregularity even is much less serious than were the irregularities in *Breslin* v. *Fries-Breslin Co., supra.*

The judgment in favor of the defendant is affirmed, with costs.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, KALISCH, VREDENBURGH, CONGDON, WHITE, TERHUNE, HEPPENHEIMER, JJ 14.

*For reversal*—None.