BANK OF WAVERLY, APPELLEE, v. JOHN W. DAILY, APPELLANT.

FILED DECEMBER 14, 1918.   No. 20774.

1. **Corporations: STOCK: EXECUTORY CONTRACT OF SALE: DIVIDENDS.** In the case of an executory contract to sell stock, binding on both purchaser and seller, where nothing is said about the dividends, dividends declared while the contract is executory belong to the purchaser, and not to the seller.

2. ———: ———: ———: ———. Evidence examined, and *held* that the contract under consideration, as construed by the parties to it, entitled the purchasers of stock sold to all dividends declared upon the stock after the sale, including that on the 20 shares in controversy.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*B. F. Good* and *A. M. Bunting,* for appellant.

*Lincoln Frost* and *H. W. Baird, contra.*

CORNISH, J.

Action against defendant as guarantor of the payment of 80/100 of certain notes held by plaintiff. Defendant admits his liability as guarantor, but alleges a counterclaim, in which he asks judgment against plaintiff for certain dividends on 20 shares of stock. From a judgment against defendant on his counterclaim, he appeals.

Defendant's liability as guarantor and his claim for dividends grow out of a certain contract, dated July 8, for the sale of 80 of the 100 shares of the plaintiff bank, had between defendant, vendor, and R. M. Beale and E. W. Negus, vendees. The contract is, in part, substantially as follows:

(1) Vendor (the defendant) "agrees to sell" and vendees "agree to purchase" 60 shares (par value $100 each) for $12,000, "to be paid * * * on or before August 1, 1913."

(2) Vendor guarantees payment of all notes of the bank "in proportion to the amount of stock sold under this contract."

(4) The vendees "shall acquire, as of the date of the" contract, "their proportionate beneficial interest, to wit, sixty one-hundredths (60/100) part of the entire assets of said bank."

(5) "It is further agreed, and is a part consideration for this contract, that parties of the second part shall buy of party of the first part the remaining 20 shares of stock held by him after said 60 shares have been sold, at any time they may want them. Ten shares in six months and ten shares on or before one year, and at the same price paid for the said 60 shares, and party of first part, agrees to sell at any time.

(6) "All shares of stock herein provided to be sold by party of the first part to parties of the second part shall, upon payment therefor as herein provided, be duly assigned and transferred to the said second parties or as they may direct; it being understood that all transfers and payments shall be made at the Bank of Waverly, Waverly, Lancaster county, Nebraska.

(7) "It is further expressly agreed and understood by first party that it is a part of the consideration for the second parties' purchasing the foregoing shares of stock that, in addition to all other stipulations and agreements herein, parties of the second part are to receive all earnings and profits of said bank on and after this date, accruing on the stock sold."

The parties took 60 shares and possession of the bank. On January 9 following, the bank declared a dividend. The next day 10 of the 20 shares of stock were paid for. On July 6 the bank declared another dividend. On July 15 the remaining 10 shares were paid for. Up to the times of these payments the 20 shares were listed by the bank in defendant's name.

On a former appeal this court adopted the report of the commission recommending a reversal of judgment of the trial court sustaining a demurrer to defendant's counterclaim. In the adopted report, which defendant contends is the law of the case, the inquiry was whether by the terms of the written contract defendant was entitled to dividends on the 20 shares before they were paid for and transferred on the books of the bank. The conclusion was reached that the parties did not understand the 20 shares to be sold at the time of the contract, else paragraph 4 of the contract would have read differently, and the vendees would then have acquired 80/100, instead of 60/100, of the assets of the bank. This construction was reasonable, although the contract showed that the 60 as well as the additional 20 shares were to be paid for in the future. If "stock sold" in paragraph 7 of the contract could not refer to an executory transaction, then the paragraph was useless. The words "foregoing shares of stock" in paragraph 7 might refer to all the stock.

The question was not free from doubt, but the court at that time had not before it the construction which the parties themselves placed upon the contract. It is plain that the purchasers of the stock in control of

the bank understood they were entitled to the dividends, else they would have declared the dividends just after, instead of just before, paying for the stock.

The evidence shows that defendant, after the contract was entered into, but before the 20 shares were paid for, voluntarily paid 80/100 of notes held by the bank. If the parties did not consider the 20 shares as stock sold, then the defendant's liability was only 60/100 of the notes. The evidence also shows that the contract, as originally drawn, provided, in paragraph 5, for only an option to buy; that the words containing the option were stricken out; and that by interlineation in the handwriting of defendant the sale agreement was made absolute. The defendant himself testifies in one place that the change was made "to make it an absolute sale" of the 20 shares. The purchasers swear that the defendant required that they should take the whole 80 shares at the time. This explains the ambiguity in paragraph 4 of the contract. We are of opinion that the trial court was justified in finding that it was the understanding of the parties that the whole 80 shares should be treated alike. *Wilhoit v. Stevenson,* 96 Neb. 751; Rev. St. 1913, sec. 7909.

If, however, we interpret the agreement merely as an executory contract for the sale of stock, we are of opinion that the purchaser of the stock, not the defendant vendor, was entitled to the 24 per cent. dividends declared. As said by an English judge, in considering this very question: "I think it would be very strange if the matter were determined otherwise; for we know that the value of such property falls immediately a dividend is paid." *Black v. Homersham,* 4 L. R. Exch. Div. (Eng.) 24. The purchaser is entitled to the thing which both the parties must have contemplated was being contracted for. Otherwise, half of the value of the stock might be taken out of it. It is for this reason that this court has twice held that dividends on stock held for security go to the holder. *Farmers &*

*Merchants Nat. Bank v. Mosher,* 63 Neb. 130; *Central Nebraska Nat. Bank v. Wilder,* 32 Neb. 454. This is not in conflict with the general rule that, in the absence of agreement to the contrary, dividends belong to the owner of the stock at the time they are declared. The purchaser is the equitable owner; the vendor is "a trustee *sub modo* for the vendee." Nor are cases where merely an option to buy is given in point. In such case the purchaser may take, or not. Ordinarily the parties would contemplate the payment of current dividends to the owner; but even then, it would seem, much might depend on the circumstances of the case and understanding of the parties. *Currie v. White,* 45 N. Y. 822; *Phinizy v. Murray,* 83 Ga. 747, 6 L. R. A. 426; *Johnson v. Underhill,* 52 N. Y. 203, 214.

It appears that, in the commissioners' report adopted by the court, we held to the contrary; but, inasmuch as the case does not turn upon this question, further comment is unnecessary.

AFFIRMED.