FARMERS EXCHANGE *v.* WALTER M. LOWNEY COMPANY.

May Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed November 18, 1921.

*Assignment of Nonnegotiable Chose in Action—Equitable Assignment—Relief in Equity—Evidence—Presumptions in Support of Decree—Debtor's Notice of Equitable Assignment of Debt—Exceptions to Findings of Fact—Modification of Decree by Supreme Court—Costs.*

1.  G. L. 1800, permitting the assignee of a nonnegotiable chose in action to sue in his own name, applies only to direct assignments of legal things in action, and does not give a remedy at law where either the claim assigned is equitable, or the claim is legal, but the assignment is equitable.
2.  The assignment of a chose in action is equitable if it is not express, but is to be implied from the circumstances and because of the equities.
3.  No particular form of words or conduct is necessary to create an equitable assignment provided the intent to create an assignment is manifest; and, if the intent appears, equity will afford both remedy and relief.
4.  If the agreement claimed to operate as an equitable assignment is in writing, the intent to assign is to be gathered from the language used, read in the light of existing circumstances.
5.  Where the chancellor failed to expressly find that there was an intent to create an equitable assignment, but found facts from

which such intent might fairly be inferred, the Supreme Court, in support of the decree, will presume that such inference was there drawn.

6. In a suit on an equitable assignment of a debt, the debtor could not claim that no assignment was shown because it did not appear what kind of a concern the creditor was, when it had paid the debt to that creditor.

7. While a debtor is not affected by an equitable assignment of the debt until he has notice of it, formal notice of the assignment is not necessary, but it is sufficient if he have notice of facts which put him on inquiry, and if a reasonable inquiry would have informed him of the assignment.

8. In such case, what are sufficient facts to put the debtor on inquiry or what constitutes reasonable inquiry are questions varying with the circumstances of each case.

9. An exception to findings of fact on the ground that they are not supported by the evidence, means, if the exception is to prevail, that there was no substantial evidence to support the facts found.

10. Evidence held sufficient to support the findings of the chancellor that defendant was put upon inquiry as to the relation between a sugar company, from whom it had ordered sugar, and the plaintiff, whom the sugar company had authorized to ship and bill the sugar direct to defendant, in respect to the shipment and payment of ths sugar, and that, if defendant had used reasonable diligence in prosecuting such inquiry, it would have gained complete information respecting the arrangement between the sugar company and the plaintiff, which was an equitable assignment to plaintiff of the sugar company's claim against defendant for the sugar.

11. Where a material fact might fairly be inferred from the findings of the court below, it will be presumed, in support of the decree, that such inference was there drawn.

12. Even if the question of defendant's notice of the equitable assignment, which was based on written evidence only, was a question of law, the bills of lading and invoices showed that plaintiff was looking to defendant for its pay for the sugar and had fairly apprised defendant of that fact, and defendant's letters to the sugar company showed that it so understood the matter, which was sufficient to put it on inquiry; and inquiry, prose-

cuted with reasonable diligence, would have disclosed the equitable assignment.

13. Even if the law imposes upon debtors no duty to make inquiry similar to that it imposes upon purchasers of choses of action and of real estate, a debtor cannot, with impunity, wholly ignore facts giving notice of an equitable assignment of the debt by his creditor.

14. The amount decreed plaintiff having included the sugar company's commission under its arrangement with the plaintiff, which was wrong, and there being no dispute as to the amount of the commission, the Supreme Court will modify the decree so as to exclude such commission, and affirm the decree as modified.

15. The plaintiff, having prevailed on the main, and really the only question litigated, is entitled to its costs on appeal, although the defendant prevailed to the extent of having the sugar company's commission deducted from the decree, a matter apparently not called to the attention of the chancellor.

APPEAL IN CHANCERY. Bill to establish and enforce an equitable assignment of a nonnegotiable chose in action. Heard on the pleadings and facts found by the Chancellor at the March Term, 1920, Franklin County, *Moulton,* Chancellor. Decree for the plaintiff. The defendant appealed. The opinion states the case.

*H. C. Shurtleff* for the defendant.

*C. G. Austin & Sons* and *Warren R. Austin* for the plaintiff.

SLACK, J. The plaintiff seeks to recover the price of two lots of maple sugar which it shipped defendant on orders received from the Vermont Maple Sugar & Syrup Company, a concern doing business in New York City. The shipments were made August 8 and August 30, 1917. The first shipment was paid for August 30 and the last was paid for September 29, 1917. Both payments were made to the sugar company.

The bill sets up an equitable assignment by the sugar company to plaintiff of the fund representing the purchase price of the sugar. The defendant filed an answer to the bill in which it incorporated a demurrer. The demurrer, after hearing, was overruled, and the benefit thereof reserved to the defendant. The

case was afterwards heard on the merits by a chancellor, who found the facts and entered a decree thereon for plaintiff for the full amount of its claim. The case is here on appeal by defendant.

[1]  The jurisdiction of chancery of the subject-matter of the suit is challenged under the demurrer. It is claimed that G. L. 1800, affords an adequate remedy at law, and therefore plaintiff has no standing in equity. It seems to us that the defendant loses sight of the character of the assignment involved and the scope of the statute in question. There is nothing in the statute to indicate that the Legislature intended to give the law courts jurisdiction of purely equitable claims. It does not change the assignability at law of a chose in action, or the nature of the assignment. 3 Pom. Eq. 1274. Nothwithstanding this statute, equity jurisdiction still exists: (a) Where a chose in action or a demand purely equitable in its nature is assigned; and (b) where the assignment itself is equitable—does not operate as an assignment at law. 1 Pom. Eq. 168. While the statute, by enabling the assignee of a legal assignment of a legal chose in action to sue in his own name, undoubtedly, makes the remedy, as to such claim, purely legal, this effect, says Mr. Pomeroy (volume 1, § 356), is confined to direct assignments of legal things in action. Equitable results arising either from the assignment of equitable demands or from the equitable assignment of funds, or the like, he says, are of course unmodified.

[2]  And in those jurisdictions where both legal and equitable systems of procedure prevail the transfer of purely equitable demands or the purely equitable assignment of legal demands are proper subjects for the cognizance of equity at the suit of the assignee. The law does not recognize in the one case the existence of a legal right, and in the other the existence of a valid transfer; and so courts of law have no jurisdiction to entertain actions in which a recovery must be based upon the legal validity of the demand or of the assignment. 3 Pom. Eq. 1278. If the nature (a) of the demand or (b) of the assignment is such that the recovery depends upon the application of equitable doctrines, the action of the assignee is equitable and not legal. 3 Pom. Eq. 1277. This author says an assignment is not legal unless it is direct, meaning, undoubtedly, unless express. If it is not express, but is to be implied from the circumstances and because of

the equities it would not be legal, but equitable. The chose in action in the case before us was a legal demand, but the transaction was not direct—*i. e.,* not express—and so legal in its nature; in other words did not operate as an assignment at law, but existed because of equitable principles, and therefore equity alone had cognizance of it. The other objections to the bill are without merit, and the demurrer was properly overruled.

[3, 4] With the distinction pointed out between assignments enforceable at law and those recognized only in equity in mind, we approach the consideration of the validity of the assignment in the case before us. No express or legal assignment—that is, one enforceable in an action at law—is shown. But that, as we have seen, is not determinative of the case. It is well settled that no particular form of words or conduct is necessary to create an equitable assignment, provided the intent is manifest. "Equity looks to the intent rather than to the form." 1 Pom. Eq. 378; *Preston* v. *Russell, Follensby & Co.,* 71 Vt. 151, 44 Atl. 115; *Brokaw* v. *Brokaw,* 41 N. J. Eq. 216, 218, 4 Atl. 66; *Bower* v. *Hadden Blue Store Co.,* 30 N. J. Eq. 171; *Harlow* v. *Bangor,* 96 Me. 294, 52 Atl. 638; *Holmes* v. *Evans,* 129 N. Y. 140, 29 N. E. 233. The determinative question in each case is: What did the parties intend by their language, or conduct, or both? If an intent to create an assignment appears, equity will afford both remedy and relief, because "equity regards that as done which ought to be done." 1 Pom. Eq. 363. The intent, if the agreement be in writing, as in the instant case, is to be gathered from the language used, read in the light of existing circumstances. *Preston* v. *Russell, Follensby & Co., supra.*

[5] It is not expressly found that the sugar company and plaintiff intended the language used in their correspondence to constitute an assignment of the fund in question to the plaintiff, but it is found that the sugar company authorized plaintiff to ship and bill the sugar direct to defendant with draft attached to the bill of lading, and pay the sugar company's commission when plaintiff received its pay; that plaintiff sent defendant the bills of lading together with bills for the sugar, and charged the sugar to defendant on its books, and credited the sugar company with the difference between its own price and what defendant was to pay, and sent the sugar company statements showing the amount of commissions credited to it on each assignment—facts from

which the court below might fairly infer the existence of such intent, and in support of the decree this Court will presume such inference was there drawn. *Roberts et al.* v. *Hughes et al.*, 86 Vt. 76, 108, 83 Atl. 807; *Chamberlain* v. *Whitney*, 65 Vt. 488, 27 Atl. 72.

[6]   The defendant claims that no assignment is shown because it does not appear "what kind of a concern the Vermont Maple Sugar & Syrup Company is, or what authority Mr. Whiting (a representative of the sugar company) had to act for them." This claim is frivolous. The defendant having recognized the sugar company to be a "concern" of sufficient standing to receive pay for the sugar, is not in a position to question its authority to make this assignment. The claim concerning Mr. Whiting is equally without merit. The correspondence shows that the arrangement was made directly with the sugar company, and not with Whiting.

[7, 8]   The defendant was not affected by this assignment, of course, until it had notice of it; until it received such notice all dealings between it and the sugar company stood precisely as though the arrangement between the sugar company and plaintiff did not exist. *Loomis* v. *Loomis*, 26 Vt. 198; 2 Pom. Eq. 702. It is not found that defendant had formal notice of the assignment. But that was not necessary. If it had knowledge of sufficient facts concerning plaintiff's relation to the transaction to put it on inquiry it must be held to have had notice of all such facts as reasonable diligence in prosecuting its inquiry in the proper direction would have brought to its own knowledge. *Passumpsic Savings Bank* v. *First National Bank*, 53 Vt. 82; *Anderson et al.* v. *Van Alen*, 12 Johns. (N. Y.) 343; *Brewster's Exr., etc.* v. *Carnes et al.*, 103 N. Y. 556, 9 N. E. 323; *Danvers* v. *Lugar*, 30 Misc. Rep. 98, 61 N. Y. Supp. 778; *Royal Indemnity Co.* v. *International Ry. Co.*, 95 Misc. Rep. 670, 159 N. Y. Supp. 764; *Smith* v. *Seman*, 32 Cal. App. 644, 163 Pac. 1038; *Nielsen* v. *City of Albert Lea*, 91 Minn. 388, 98 N. W. 195; *Washoe County Bank* v. *Campbell et al.*, 41 Nev. 153, 167 Pac. 643; 1 Story Eq. Jur. par. 400. No rule can well be established as to what are sufficient facts to put one upon inquiry (*Knapp* v. *Bailey*, 79 Me. 195, 9 Atl. 122, 1 A. S. R. 295), or what constitutes reasonable inquiry (*Passumpsic Savings Bank* v. *First National Bank, supra*). Both these questions vary with the circumstances of each case.

[9-11] It is found that the circumstances of the transaction and the various correspondence and invoices referred to in the findings were such as to put the defendant upon inquiry as to the relation betwen the sugar company and plaintiff in respect to the shipment and payment of the consignment of sugar, and, further, that if the defendant had used reasonable diligence in prosecuting such inquiry, it would have gained complete information respecting the arrangement betwen the sugar company and plaintiff. These findings are sufficient, if sustained, to charge defendant with notice of the assignment. They are challenged, however, on the ground that they are not supported by the evidence, which means, if the exception is to prevail, that there was no substantial evidence tending to establish the facts found. *Gilbo & Swartz* v. *Merrill's Est.*, 92 Vt. 380, 104 Atl. 10, L. R. A. 1918 F, 387. That there was evidence tending to support the finding that the facts disclosed were such as to put the defendant upon inquiry as to the arrangement between the sugar company and plaintiff clearly appears. Not only did defendant receive from plaintiff the bill of lading for each lot of sugar, but it also received from plaintiff an itemized statement or bill for each consignment, from which it appeared that plaintiff was the seller of the sugar and had charged it directly to defendant. These circumstances were sufficient to apprise a person of ordinary caution and prudence that plaintiff was looking to defendant for pay for the sugar shipped to it. And that defendant understood that plaintiff was looking to it for its pay is shown by two letters written by defendant to the sugar company under dates of September 17 and 22, respectively. In the former it says, ''We are not at all interested in the Farmers' Exchange and shall address our correspondence and make remittances to you,'' and in the latter it says, ''We have had nothing to do with the Farmers' Exchange shipments and refuse to pay them money.'' Manifestly we cannot say there was no evidence tending to support the finding in question. We think, too, that the circumstances disclosed tend to support the finding that, if defendant had inquired with reasonable diligence concerning the plaintiff's relation to the fund in its hands, it would have acquired full information respecting the matter. Neither plaintiff nor the sugar company could have had any motive for concealing from defendant any part of the transaction; it was a clean, above-board ar-

rangement under which plaintiff was to furnish defendant this sugar and look to it for its pay. These circumstances justify the conclusion and finding that, if defendant had made reasonable inquiry it would have ascertained what the real arrangement was. The exceptions to the findings are overruled. From these findings the court below might fairly infer notice to the defendant of the assignment, and that such inference was there drawn will be presumed in support of the decree. *Roberts et al.* v. *Hughes et al., supra; Chamberlain* v. *Whitney, supra.*

[12]    The defendant says, however, that these findings are not warranted by the evidence, because, the dealings between the parties being in writing, the writings present solely a question of legal construction. It is doubtful whether this question was raised below, but, assuming that it was raised, and assuming also that defendant is right in its contention that the construction to be given the written evidence was for the court, we think the bills of lading and invoices, fairly construed, show that plaintiff was looking to defendant for its pay for the sugar and had fairly apprised defendant of that fact. Moreover, as we have seen, defendant's letter to the sugar company clearly shows that defendant so understood the matter. This was sufficient to put it upon inquiry; and inquiry, prosecuted with reasonable diligence, would have acquainted defendant with the true situation.

[13]    The defendant contends that the rule requiring purchasers of choses in action and of real estate, etc., to inquire concerning hostile claims does not apply to debtors, that the law imposes no duty upon debtors to make inquiry. *Skobis et al.* v. *Ferge et al.,* 102 Wis. 122, 78 N. W. 426, and perhaps a few other cases, appear to support this claim; but it is going too far to say that a debtor may, with impunity, absolutely close his eyes to the light before him and wholly ignore "the signs and signals" seen by him. While more positive and convincing circumstances may be necessary to put him upon inquiry than is required in the case of the subsequent purchaser or subsequent assignee, yet cases may arise where the circumstances disclosed are sufficient to move a debtor to investigate. Such, we think, is the case before us.

[14]    The amount decreed plaintiff includes the sugar company's commission under its agreement with plaintiff. In the circumstances we think this is wrong, but, there being no dis-

pute as to the amount of such commission, the difficulty is easily disposed of. The third paragraph of the decree is altered so as to read as follows: "That the defendant pay to the plaintiff the sum of $863.35, with interest thereon from August 8, 1917, to the date of this decree, and the sum of $2,178.21, with interest thereon from August 30, 1917, to the date of this decree."

*And, being so altered, the decree is affirmed and cause remanded.*

## ON MOTION FOR REARGUMENT.

After the foregoing opinion was handed down counsel for defendant had leave to file a motion for reargument, pending which final disposition of the case has been withheld.

The reasons assigned in support of the motion are: (a) That the Court failed to consider and determine the authority of Whiting to bind the sugar company by any assignment or attempted assignment of its funds or credits; and (b) failed to allow defendant its costs in this Court after modifying the decree below by deducting therefrom the sugar company's commission.

The first question was considered, and is disposed of in the opinion. That the arrangement, which we hold constitutes an equitable assignment, was made by correspondence was admitted by defendant. The opinion states that the correspondence shows that the arrangement was made direct with the sugar company, and not with Whiting. To this we may add that it appears from the findings, "that the letters and telegrams between the plaintiff and the defendant and the sugar company, constituting Plaintiff's Exhibits 1, 2, 3, etc. which constitute the arrangement), were written, sent, and received by the respective parties," and this finding was not excepted to.

The sugar company, and not Whiting, made the assignment, and, that being so, his authority to make it is not in issue.

[15] The plaintiff having prevailed on the main, and really the only, question litigated, namely, its right to recover in this action for the sugar shipped to defendant, and defendant having prevailed only to the extent of having the amount of the sugar company's commission deducted from the amount decreed plain-

tiff, a matter apparently not called to the attention of the chancellor, we think plaintiff entitled to its costs in this Court.

*Motion denied. Let full entry order go down at once.*