MORRISON *et al. v.* GULF OIL CORPORATION *et al.*

(Division B. May 27, 1940. Suggestion of Error Overruled Sept. 4, 1940.)

[196 So. 247. No. 34139.]

**Jacobson & Snow,** of Meridian, for appellants.

Eaton & Eaton, of Gulfport, for appellees.

Argued orally by **Gabe Jacobson**, for appellants, and by **B. E. Eaton, Sr.**, for appellees.

**McGehee, J.**, delivered the opinion of the court.

The appellants, who compose the liquidating committee of the Cahn Bank & Trust Company, of Meridian, Mississippi, and who are vested with authority under a decree of the chancery court to sue for and collect the indebtednesses due said bank, brought this suit by attachment and garnishment in the Chancery Court of Harrison County, under Section 173 of the Code of 1930, against the Gulf Oil Corporation, of Pittsburgh, Pennsylvania, as a non-resident defendant, the Gulf Refining Company as a resident garnishee, and R. L. Bradshaw, a local resident debtor, to recover an indebtedness of $1,491.71 due and owing by the said Bradshaw to the Reconstruction Finance Corporation on his promissory note executed in favor of the said Cahn Bank & Trust Company to evidence a loan obtained by him from said bank, and which note and ten shares of the capital stock of the non-resident defendant corporation, which were issued and registered in the name of the said Bradshaw and pledged by him as collateral security, were assigned and transferred along with other collateral by proper endorsement to the Reconstruction Finance Corporation as security for a loan made by it to the bank; and in which suit a decree was also sought, but denied appellants, against the non-resident defendant for the sum of $567.68, with interest thereon at the legal rate from and after December 26, 1936, on the ground that the said defendant, on that date, paid over to the said Bradshaw, who was insolvent, a 100% stock dividend in said amount, after notice of the rights of the assignees, respectively, and demand made by them for said dividend, and which was thereupon converted by the said Bradshaw to his own use and benefit.

The proof disclosed without dispute that upon learning that the stock dividend was to be declared on December 21, 1936, the appellants advised the appellee, Gulf Oil Corporation, at its home office in Pittsburg, by letter

of November 13, 1936, and by repeated communications thereafter, of the rights of the assignees in and to the dividend in question, and urged the said corporation not to pay the same to the said Bradshaw. On November 16th, 1936, the treasurer of said corporation wrote the receiver of the Cahn Bank & Trust Company, acknowledging receipt of his letter of the 13th instant, and stated that "Any dividends payable on Gulf Oil Corporation stock will be paid to R. L. Bradshaw who is the registered holder on my records." Again, on December 9, 1936, he wrote the receiver of said bank that, "I will be unable to comply with your request unless I receive written request from Mr. R. L. Bradshaw to forward this stock dividend to him in care of your bank." Of course, as shown by the evidence, the assignees could not get the co-operation of Bradshaw in the matter, otherwise the written request from him for the dividend to be paid over to one or the other of the assignees would have been forwarded.

The appellee, Gulf Oil Corporation, defended the suit on two grounds: (1), that the suit could not be maintained by the appellants, for the reason that Section 505, of the Code of 1930, requires that the last assignee, the Reconstruction Finance Corporation, must bring the suit on any assigned chose in action, or that it must be begun, prosecuted and continued in the name of the original party, where there has been a transfer or an assignment of any interest in such chose in action before or after suit brought; and (2) that under the "Uniform Transfer Act," approved May 5, 1911, Section 303 of Title 15 of Purdon's Pennsylvania Statutes 1936, and Section 509 of Act No. 106, 15 P. S. Sec. 2852—509, approved May 5, 1933, known as the "Business Corporation Law of Pennsylvania," the said corporation was protected in paying out the said stock dividend to the person in whose name the shares of stock were registered on the books of the corporation.

Responding to the first contention above stated, we are of the opinion that the lower court was correct in holding

that the suit was properly brought, for the reason that it was necessary for the debt due by Bradshaw on the note to be established in order to entitle the holder of the note to the income from the stock which was held as collateral thereto. The Cahn Bank & Trust Company, as the payee named therein, was the original party entitled to sue on the note, within the meaning of Section 505, Code of 1930, supra, since the suit on the note could not be maintained in Bradshaw's name as maker, even though he was the original party insofar as the right to collect the dividend on the stock pledged as collateral was concerned. Moreover, the original party in each instance was before the court as complainant and defendant, respectively.

On the second ground of defense interposed by the appellee corporation, we find that Section 303 of Title 15 of Purdon's Pennsylvania Statutes 1936, known as the "Uniform Transfer Act," reads in part as follows: "Corporation not forbidden to consider registered holder as owner Nothing in this act shall be construed as forbidding a corporation—(a.) To recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner, or (b.) To hold liable for calls and assessments a person registered on its books as the owner of shares."

Also, that Section 509 of Act No. 106, approved May 5, 1933, known as the "Business Corporation Law of Pennsylvania," supra, so far as its provisions here pertinent are concerned, provides for the fixing of a date, by the board of directors of a corporation in that state, not less than ten or more than forty days in the future, for the payment of any such dividend or distribution; that, "in such case, only such shareholders as shall be shareholders of record on the date so fixed shall be entitled to notice of, and to vote at, such meeting, or to receive payment of such dividend, . . . notwithstanding any transfer of any shares on the books of the corporation after any record date fixed, as aforesaid;"

and that "the board of directors may close the books of the corporation against transfers of shares during the whole or any part of such period, and in such case written or printed notice thereof shall be mailed at least ten days before the closing thereof to each shareholder of record at the address appearing on the records of the corporation or supplied by him to the corporation for the purpose of notice. While the stock transfer books of the corporation are closed, no transfer of shares shall be made thereon."

After having previously advised the said appellee corporation of the rights of the Cahn Bank & Trust Company and Reconstruction Finance Corporation as aforesaid, the receiver of the bank again on December 10, 1936, advised appellee of the bank's ownership of the stock and of the equity of its said assignee, and that the stock "will be mailed to you properly endorsed at once." Since the receiver of the bank resided in Meridian, Mississippi, and the loan agency of the Reconstruction Finance Corporation, to which the stock had been pledged by the bank, was at New Orleans, Louisiana, it would necessarily have required a few days thereafter in order for the receiver to arrange for the registration of the change of ownership of the stock on the books of the corporation, and the result was that in the meantime he received a letter from the corporation, written on December 9, 1936, advising him in substance that the only way for the bank to protect its interest in the premises was to obtain a written request from Bradshaw for the stock dividend to be forwarded to the bank; and this condition could not be met. No response having been made to the receiver's letter of December 10, 1936, stating that the stock would be mailed to the corporation properly endorsed, and the requirement of a written request from Bradshaw to the corporation being insisted upon, the receiver was next advised by the corporation on December 29, 1936, that the stock dividend had been forwarded to Bradshaw, and he was again referred to the terms of the letter of De-

cember 9, 1936, wherein the corporation had taken the position that only a written request from Bradshaw would suffice. Thus the appellee knowingly aided and assisted the debtor Bradshaw in converting the proceeds of the stock dividend to his own use, and in defeating the rights and equities of the bank and its assignee in the premises, while charged with notice under the facts and the law that it was the duty of Bradshaw to cooperate with the bank and its assignee in having the necessary registration of the stock made on appellee's books to entitle them to receive the dividend when paid.

It is conceded that the rule is well settled at common law that a corporation is liable to a pledgee of its corporate stock for all dividends paid thereon to the record owner of the stock, with notice of the rights of the pledgee. But it is insisted that the statutes of Pennsylvania, supra, abrogate the common-law rule. It is to be observed, however, that the statutes do not expressly deal with the rights of an assignee of the record owner where the corporation has notice of such rights before paying out a dividend on the assigned stock. In Connell's Estate, 282 Pa. 555, 128 A. 503, 505, 38 A. L. R. 1362, in discussing the "Uniform Transfer Act," supra, the Court said: "The act imposes the duty upon one who has equitably assigned his interest in the stock to make a formal transfer when demanded and a like duty upon his personal representative, if he dies before having done so—a mere expression of the common law rule." Also, in the case of Citizen's Nat. Bank of Irwin v. Irwin Building & Loan Ass'n, 316 Pa. 536, 175 A. 399, 400, the Supreme Court of Pennsylvania held that: "The provision of the Uniform Stock Transfer Act (May 5, 1911, P. L. 126, (15 P. S. Secs. 301-324)) which prescribes that title to certificates of stock shall pass by indorsement as of the time of registration of the transfer, 'was evidently inserted for the protection of the corporation, so that it might safely deal, in the payment of dividends, or otherwise, with the person in whose name the stock

was registered but was not intended to control the rights of the parties when one saw fit to transfer his rights to another.' Connell's Estate, 282 Pa. 555, 561, 128 A. 503, 505, 38 A. L. R. 1362.'' In that case, J. Arthur Jones, president of the appellant bank, was indebted to the bank for a large sum of money and pledged as collateral his stock in the appellee Loan Association, but the certificates were not transferred on the books of the association. Subsequently, the association advanced Jones money on the credit of the stock, without requiring production and assignment of the stock certificates to the association, and the court held that ''Jones having previously made a bona fide pledge of the certificates, to secure an indebtedness to the bank, the association and not the bank, an innocent creditor, must suffer.'' Thus, it will be seen that the case, supra, did not involve a question of notice to the association of the rights of the bank, as in the case at bar, but the decision does recognize and reaffirm the principle announced in Connell's Estate, supra, to the effect that the statute in question was ''for the protection of the corporation, so that it might safely deal, in the payment of dividends, or otherwise, with the person in whose name the stock was registered *but was not intended to control the rights of the parties when one saw fit to transfer his rights to another.''* (Italics ours.)

No decision of the Pennsylvania Court is called to our attention wherein the rights of an assignee of corporate stock have been determined under either of the two statutes here involved, where the assignor remains the record owner, but where the corporation has received actual notice of the right of the assignee to receive the stock dividends before the corporation has paid the same to the record owner, and has been requested by the assignee not to make payment to such record owner. The only decision cited in the briefs of counsel wherein a similar statute has been construed on the issue here involved is the case of Homestake Oil Company v. Rigler, decided by the United States Circuit Court of Appeals, 9th Circuit, re-

ported in 39 F. (2d) 40, 41, construing Section 5954, Revised Codes of Montana, 1921, relating to the transfer of corporate stock, which reads in part as follows: ". . . no such transfer shall affect the right of the corporation to pay any dividend due upon the stock, or treat the holder of record as the holder in fact, until such transfer is recorded upon the books of the corporation, or a new certificate is issued to the person to whom it has been transferred." The court said: "The obvious purpose of the statute is to protect the corporation in the payment of dividends upon its stock. Dividends in a corporation are property and subject of contract. Willis v. Lauridson, 161 Cal. 106, 118 P. 530; Cogswell v. Second Nat. Bank, 78 Conn. 75, 60 A. 1059; New Jersey Car Spring & Rubber Co. v. Fields, 85 N. J. L. 217, 88 A. 1031; Bank of Waverly v. Daily, 103 Neb. 7, 170 N. W. 183; Harris v. Stevens, 7 N. H. 454; Hyatt v. Allen, 56 N. Y. 553, 15 Am. Rep. 449. In the absence of statute or by-law, notice of transfer is not necessary. Porter v. Hartley, 67 Mont. 244, 216 P. 344; Farmers' Exchange v. Lowney Co., 95 Vt. 445, 115 A. 507. The corporation is protected in paying dividends to the record owner until notified of assignment and right to collect the dividends. 14 C. J. 819. By the statute, title to stock passes by delivery, but, unless transferred on the books of the corporation, dividends may be paid to registered owner, but, if notice of transfer is otherwise given, dividends must be paid to the assignee or person authorized by contract to receive them."

We are of the opinion that the foregoing announcement is the proper construction of the statute there involved, and that the Pennsylvania statutes now under consideration in the case at bar are susceptible of that same interpretation; that, being for the protection of the corporation in the matter of paying out dividends, they simply mean that the corporation is entitled to rely upon its books in ascertaining who are entitled to dividends, in the absence of notice of the rights of third parties;

that if the legislature had intended to abrogate the well established common-law rule to the effect that a dividend paying corporation is liable to an assignee or pledgee for dividends paid out to the assignor or pledgor as record owner, with notice of the assignment or pledge, it would have employed language more aptly expressing that intention. In the absence of a decision of the Pennsylvania court construing these statutes of that state with particular reference to the issue presented in the present case, we adopt and follow the holding of the Homestake Oil Co. v. Rigler case, supra, since it not only appears to be sound, but comports with right and justice when applied to the case presented by this record.

Therefore, the decree of the court below will be reversed, and decree rendered here for the appellants against the appellee, Gulf Oil Corporation, for the amount of the stock dividend of $567.68 paid by said corporation to Bradshaw on December 26, 1936, with interest at 6% per annum from that date, payable out of the funds admitted by the local garnishee defendant, Gulf Refining Company, to be due said non-resident corporation, and to be credited on the judgment of $1,491.71 recovered by the appellants in the lower court against R. L. Bradshaw, and from which no appeal was taken.

Reversed, and decree here for appellants.