MONTE GLOVE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 104559.   Promulgated May 21, 1941.

*Merle H. Miller, Esq.*, for the petitioner.
*S. U. Hiken, Esq.*, for the respondent.

**OPINION.**

KERN: The first issue for our decision here is whether petitioner is entitled to a dividends paid credit pursuant to section 27 (a) of the Revenue Act of 1936, or whether it is precluded from such credit by virtue of section 27 (g) of the same act and article 27 (g)–1 of Regulations 94. Both of these sections of the act, together with this article of the regulations, are set out in the margin.[1]

---

[1] SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

(a) DIVIDENDS PAID CREDIT IN GENERAL.—For the purposes of this title, the dividends paid credit shall be the amount of dividends paid during the taxable year.

\* \* \* \* \* \* \*

(g) PREFERENTIAL DIVIDENDS.—No dividends paid credit shall be allowed with respect to any distribution unless the distribution is pro rata, equal in amount, and with no preference to any share of stock as compared with other shares of the same class.

ART. 27 (g)–1. *Preferential distributions.*—Section 27 (g) imposes a limitation upon the general rule that a corporation is entitled to a dividends paid credit with respect to all dividends which it actually pays during the taxable year. Before a corporation may be entitled to any dividends paid credit with respect to a distribution, regardless of the medium in which the distribution is made, every shareholder of the class of stock with respect to which the distribution is made must be treated the same as every other shareholder of that class. The limitation imposed by the Act is unqualified and the existence of a preference is sufficient to prohibit allowance of the dividends paid credit regardless of the fact (1) that such preference is authorized by all the shareholders of the corporation, or (2) that the part of the distribution received by the shareholder benefited by the preference is taxable to him as a dividend. A corporation will not be entitled to a dividends paid credit with respect to any distribution upon a class of stock if there is distributed to any shareholder of such class (in proportion to the number of shares held by him) more or less than his pro rata part of the distribution as compared with the distribution made to any other shareholder of the same class. The disallowance of the dividends paid credit, where any preference or inequality in fact exists, extends to the entire amount of the distribution and not merely to a part of such distribution.

Without considering the question raised by the contract of Young and Soller to purchase the stock in petitioner owned by the so-called Montgomery interests, the factual background may be succinctly restated as follows: The stock in petitioner was owned prior to the taxable year in the following proportions: 35 percent by C. Steinhauser, 35 percent by the Montgomery interests, 20 percent by Soller, and 10 percent by Young. Soller and Young were devoting all of their time to the business of petitioner, as its first vice president and secretary-treasurer, respectively. For several years prior to the taxable year the stockholders of petitioner, in consideration of the services of Young and Soller had adopted a petition addressed to petitioner's directors authorizing and directing them to make a disposition of the net earnings of petitioner in the proportion of 25 percent to Soller, 25 percent to Young, 25 percent to Steinhauser and 25 percent to the Montgomery interests. In the taxable year, Young and Soller having entered into a contract to purchase the shares formerly held by the Montgomery interests, the stockholders' petition was to the effect that the directors should distribute the net earnings in the proportion of 25 percent to Steinhauser, 25 percent to Young, 25 percent to Soller and 25 percent "to be proportionately divided according to the stock owned, to the owners of the stock formerly owned by H. G. Montgomery." Thereupon, on April 19, 1937, the directors resolved

* * * that a dividend for the fiscal year of 1936, ending April 30th, 1937, be declared in the sum of Ten Thousand Dollars ($10,000.00) and paid to common stockholders as follows:

| | |
|---|---|
| C. Steinhauser, the sum of | $2,500.00 |
| John S. Young, the sum of | 3,928.57 |
| Edwin Soller, the sum of | 3,571.43 |

If the dividend had been distributed pro rata according to the stockholdings in petitioner, it is obvious that Steinhauser's dividend would have been $3,500 instead of $2,500, the amount of his dividend as declared by the board of directors, and also obvious that the dividends to Young and Soller would have been less. Accordingly it is the contention of respondent that the distribution of dividends was preferential and not pro rata and, therefore, petitioner is not entitled to a dividends paid credit.

On the other hand, petitioner contends that the petition of the stockholders authorizing the payment of the dividend in the amounts declared amounted to an assignment by stockholders other than Young and Soller of future dividends binding on the corporation, that the stockholders are individually taxable on what would have been their pro rata distributions, but that if they chose to accept less than their pro rata distribution it should be considered that they had assigned any excess to those stockholders receiving more than a pro rata distri-

bution. Accordingly, petitioner contends that Steinhauser should be taxable on a dividend distribution of $3,500 constructively received by him, of which amount he, in effect, assigned $500 to Young and $500 to Soller. The conclusion of petitioner's argument seems to be that the dividend distribution must, therefore, be considered as, in reality, pro rata, and not preferential and that the fact that the actual payment by the corporation to its stockholders was in amounts not pro rata to the stockholdings was only because the corporation recognized, as it was bound to do, the prior assignments by some of its stockholders of part of these pro rata dividend distributions.

A sufficient answer to petitioner's contention is that the right of the stockholders to the dividends actually declared and paid arose from the declaration of such dividends by petitioner's board of directors and not by reason of any petition by stockholders. *Richter & Co.* v. *Light* (Conn.), 116 Atl. 600; *Nutter* v. *Andrews* (Mass.), 140 N. E. 744. In spite of petitioner's ingenious argument, the fact stands out that no assignments of future dividends were executed by petitioner's stockholders. In this vital respect the instant proceeding differs from the cases of *Fred W. Warner*, 5 B. T. A. 963, and *Alfred Le Blanc*, 7 B. T. A. 256, relied upon by petitioner, in each of which there was actually an assignment by a stockholder of a corporation to one not a stockholder of future pro rata dividends. Here all that was actually done was that all the shareholders of the corporation authorized a preference in the distribution of the dividend, something which is expressly stated in the quoted article of Regulations 94, to in no way qualify the limitation imposed upon the granting of the dividends paid credit by section 27 (g). See also Report of Committee on Ways and Means on the 1938 Revenue Bill, H. Rept. No. 1860. The fact that stockholders of a corporation authorize or approve a preferential dividend distribution does not make it any less a preferential distribution. *Lincoln National Bank* v. *Burnet*, 63 Fed. (2d) 131. To hold, as petitioner would have us hold, that, where all the stockholders of a corporation assent to and authorize a preferential dividend distribution, such a distribution will not be considered as preferential within the meaning of section 27 (g), would necessitate our adding to that section the clause "or unless all of the stockholders assent to such distribution." This, it goes without saying, is a matter proper only to the legislative branch of government. In view of the fact that a section similar to section 27 (g) was included in the Acts of 1938 and 1940 after the promulgation of article 27 (g)–1 of Regulations 94, we must conclude that Congress did not intend any such exception to be read into this section.

For the proposition that the petition of the stockholders was binding on the corporation and constituted an equitable assignment, petitioner relies heavily on *Wabash Ry. Co.* v. *American Refrigerator*

544

*Transit Co.*, 7 Fed. (2d) 335. The fact that in that case there was a formal and binding contract with regard to dividend payments, to which not only the stockholders but also the corporation were parties, and to which reference was made in the stock certificates themselves, is sufficient to distinguish that case from the instant proceeding, in which the stockholders' petition, in so far as the corporation is concerned, is unilateral. It should also be pointed out that in that case the ultimate issue was a question of equity jurisdiction; there was no declaration of a dividend by the board of directors, and the case in no way involved a construction of the pertinent sections of the revenue act. The cases of *New Jersey Car Spring & Rubber Co.* v. *Fields* (N. J.), 88 Atl. 1031, and *Farquar* v. *Canada-Atlantic & P. P. S. Co.* (Mass.), 98 N. E. 1036, also cited by petitioner, are even less in point.

We conclude that, where a dividend is declared by a corporation and is paid by it to all of its stockholders, not in proportion to their stockholdings, but in preferential amounts called for in the declaration of dividends, the stockholders take such dividend by virtue of the corporate resolution declaring it, even though they have by a petition assented to and authorized the declaration of dividends in such preferential amounts; that such a dividend distribution is preferential within the meaning of section 27 (g) of the Revenue Act of 1936; and that by the terms of that section the corporation is not entitled to a dividends paid credit.

The other issue raised by the pleadings in this proceeding is as to the reasonableness of a salary paid to Myrtle V. Montgomery, deduction for which was claimed by petitioner in the amount of $2,255. Since this issue was first raised by respondent at the hearing, the burden of proof is upon respondent. Rule 32, Rules of Practice before the United States Board of Tax Appeals. On the strength of the testimony elicited by respondent at the hearing in relation to Myrtle V. Montgomery's activities and residence during the taxable year, we are of the opinion that the amount paid to her and deducted by petitioner in its return was unreasonable and excessive. Although petitioner asserts that she was acting in her capacity of second vice president when conferring on the cotton sales, it must be borne in mind that she was also one of petitioner's principal stockholders. She did nothing, according to the evidence, except sit in, or have J. D. DePrez sit in for her, on the conferences pertaining to future purchases of cotton. As we pointed out in *Home Industry Iron Works*, 8 B. T. A. 1267, these services are not unusual nor unexpected from a principal stockholder, and do not merit the salary paid her by the petitioner. The deduction for salary is therefore disallowed.

*Decision will be entered under Rule 50.*