## PASSUMPSIC SAVINGS BANK *v.* THE FIRST NATIONAL BANK OF ST. JOHNSBURY.

### [IN CHANCERY.]

*Mortgage. General Description of Indebtedness. Priority. Constructive Notice. Cross-Bill.*

1. The record of a mortgage, with a general description of the indebtedness, is constructive notice; and sufficient to put all parties interested upon inquiry; and they must inquire in the proper quarter, as stated by Ch. J. REDFIELD, in *Seymour* v. *Darrow*, 31 Vt. 131.

2. When one is put on inquiry, he is chargeable with notice of all facts that could be obtained by the exercise of reasonable diligence, prosecuting the inquiry in the right direction.

3. But while this is so, and while a liberal rule has been adopted to give effect to such mortgages, from the necessity of the case, there must be some limit to the inquiry, which one is bound to make; and that limit is reasonable diligence.

4. Courts have not attempted to lay down a general rule as to what would constitute reasonable inquiry. This must vary with the circumstances of each case.

5. This mortgage was given to a retiring partner, to secure him against the liabilities of the partnership; and also for the "*balance which should be due him on the purchase of said property.*" Notes were given to the mortgagee, but were not described, except as above. The note in question was assigned to the orator. The company was composed of three members; one living in Conn., one in Cala., and the managing partner in this State. The defendant examined the records; and inquired of both the mortgagee and mortgagor, (that is

the one partner in this State) whether anything was due to the mortgagee for the purchase money, and was informed by both that it " was all paid ;" and then took its mortgage.   *Held,* that the second mortgage should prevail over the first.

6.   Where the parties have agreed that the answer may be treated as a cross-bill, with any appropriate prayer, the court will treat it as such, and render a decree thereon.

This cause was heard at the December Term, 1879; Caledonia County.   Ross, Chancellor, made the following decretal order :

The foregoing case was heard on bill, answer, traverse, and testimony.   From the condition of the mortgage under which the orator seeks a foreclosure, I think that the partnership debts, therein specified, are a prior lien on the property to the orator's note, for the balance of the purchase money of said Colby's share; and also that the condition of the mortgage, as to the balance of the purchase money, only operated to put the defendant upon inquiry as to such indebtedness ; and having inquired of both the mortgagor, Orcutt, and mortgagee, Colby, the defendant discharged its full duty ; and its subsequent claim for the indebtedness from Gay & Orcutt takes precedence to the orator's note. But if this latter is not so, I think the defendant is entitled to hold all its claims against the partnership, named in the condition, whether at present existing in the notes of such partnerships, or of Gay & Orcutt, as prior to the orator's note ; and to ascertain this amount, as well as the amount due on the orator's note, the same is referred to the clerk, as special master, that the supreme court may have all the elements for a final decree, upon whichever basis it may adopt.   On the filing of such report, the orator's bill is decreed to be dismissed with costs, unless it redeems the whole of the defendant's claims within six months from date.

#### MASTER'S REPORT.

The foregoing cause having been referred to the undersigned, as master, to find how much of the old partnership debt the defendant holds against the firms, Colby, Gay & Blake, and Colby, Gay & Orcutt, I find from the testimony of Judge Poland, that the First National Bank now holds seven notes of the said Colby, Gay & Blake, amounting with interest thereon, to the 1st day of March, 1880, to the sum of two thousand nine hundred and fifty-one dollars and forty-four cents, ($2951.44) ; which said notes are renewals of notes given by the said Colby, Gay & Blake, for money loaned to said firm during its existence.

The said bank also holds two notes of the said Colby, Gay & Orcutt, amounting, with interest thereon, to the first day of March,

1880, to the sum of $506.24. These notes are renewals of notes given by the said firm of Colby, Gay & Orcutt, for money loaned to said firm, during its existence ; and all the aforesaid notes are debts of Colby, Gay & Blake, and Colby, Gay & Orcutt, which were due and owing, on the first day of March, 1876, and were assumed by said Gay & Orcutt, on their purchase of the interest of said Colby in said partnership property ; and their payment was secured by the mortgage given by said Gay & Orcutt to said Colby & Blake. I find that there is due on the note held by the orator, which is secured by property described in said orator's bill, on the 10th day of July, A. D. 1880, the sum of $375.38. All of which is respectfully submitted.

There was a written agreement to treat the defendant's answer as a cross-bill, with any appropriate prayer.

### ABSTRACT OF BILL.

This was a petition to foreclose a mortgage. The bill set forth :—

That March 1, 1876, George Gay, of Meriden, Conn., and Orrin W. Orcutt, of St. Johnsbury, executed to Daniel Colby and Mark F. Blake, both of St. Johnsbury, a mortgage deed of premises in St. Johnsbury, described in the deed as follows : " Situated in the village of St. Johnsbury, being the land, buildings, water-power and machinery of every description, owned and occupied by the firm of Colby & Orcutt, in said village, and being the same premises deeded by said Colby to said Gay & Orcutt, February 29th, 1876 ; that the deed was conditioned for the payment by Gay & Orcutt of the debts and liabilities of every description of the firms of Colby, Gay & Blake, and of Colby, Gay & Orcutt; that the deed was also conditioned for the payment by Gay & Orcutt to Colby for the balance due him on the purchase of the property by Gay & Orcutt; that at the time of the purchase, February 29, 1876, seven notes were given by Gay & Orcutt to Colby as the purchase money above referred to. None of these notes enter into the case except the one hereafter mentioned ; that these seven notes were given for the purchase money above referred to, and were all the obligations referred to, as the balance of the purchase money, in said mortgage, and that said mortgage could not be void till all the seven notes were paid; that on a day, not mentioned, the orator bought of Daniel Colby, one of the said seven notes, (it being the sixth mentioned) ; that the note was signed by said Gay & Orcutt, dated March 1, 1876, payable to Daniel Colby or order, at the First National Bank of St.

Johnsbury, for the sum of $326.00, payable in 12 months from its date; that the orator paid a valuable consideration therefor and now owns said note; that said note had not been paid, but that the orator was informed that all the other six notes were paid; that the defendant was the only person having an interest in the equity of redemption of the premises. The orator prayed that the equity of redemption of the defendant in the premises might be foreclosed.

The answer set out the condition in the mortgage deed, as given in the opinion of the court; claimed that it was so vague and deceptive, as to be void; denied all knowledge of the orator's note; claimed that the property in dispute was partnership property, and, therefore, should go to pay partnership debts first; that defendant's debt was a partnership debt; that the description in the mortgage of the indebtedness was not in law a sufficient notice to put defendant on inquiry, but if so, the most diligent inquiry had failed to reveal any debt due. The other facts in the answer are sufficiently stated in the opinion of the court.

*Willard*, for the orator.

1. The first objection, viz: that the condition is so vague in regard to the balance of the purchase money, as to be void, cannot prevail. The point has been raised and decided the other way. *Seymour* v. *Darrow*, 31 Vt. 122. The defendant then says, that it was only put upon inquiry, and by inquiry learned nothing. What, then, was the defendant's knowledge relating to this mortgage? It knew there was such a mortgage. It knew that there *had been* something due on the purchase money, even on Judge Poland's testimony, for he says that Orcutt and Colby both told him that "it was all paid." The defendant says that Colby and Orcutt told it, that all these notes were paid. Is the orator bound by these statements?

*a.* It cannot, of course, be bound by what Orcutt said, for he was the debtor in the note. *Seymour* v. *Darrow*, 31 Vt. 136.

*b.* As to Colby: Willard took the note before maturity, without notice, for a then created debt. He was then a *bona fide* holder for value. *Griswold* v. *Davis*, 31 Vt. 390; *Brooklyn, &c., R. R. Co.* v. *Bank of the Republic*, 10th Reporter, 289 (U. S.

Sup. Ct., May, 1880.)　Willard being a *bona fide* holder for value, his assignee would be.　*Roberts* v. *Lane,* 64 Me. 108.

The orator, then, is a *bona fide* holder of the note for value. As holder of the *note,* it, of course, could not be precluded from its action against Gay & Orcutt on the note, by what Colby said. The transfer of the note was an assignment of the mortgage. The mortgage passes with the note as a mere incident of the debt. As holder of the note, the orator became entitled to all the benefit of the mortgage free from any equities existing between the mortgagor and mortgagee.　*Carpenter* v. *Longan,* 16 Wall. 273 ; *Nash* v. *Kelley,* 50 Vt. 325 ; *Beals* v. *Neddo,* 9th Reporter, 397, (U. S. C. Ct., Kan. 1880.)　And free from anything existing thereafter between mortgagor or mortgagee and third persons.　*Catherwood* v. *Burrows,* 7th Reporter 492, (Ind. 1879) ; *Pratt* v. *Bank of Bennington,* 10 Vt. 293 ; *Hassey* v. *Wilkins,* 10th Reporter 521.

Can this claim stand without the mortgage ? The property cannot be followed into the hands of third parties and there be charged with these debts.　*Receiver* v. *Beauregard,* 7th Reporter 481 (U. S. Sup. Ct. 1879).　Can this claim stand on the mortgage ? When property is conveyed to two or more in mortgage they are tenants-in-common and share therein according to their interests.　*Burnett* v. *Pratt,* 22 Pick. 556 ; *Donnel* v. *Edwards,* 2 Pick. 617 ; *Gilman* v. *Morrill,* 8 Vt. 77 ; 1 Jones on Mortgages, s. 135 ; 1 Washb. Real Prop., 576 ; *Blackmer* v. *Davis,* 10th Reporter, 365 (Mass. 1880).

*L. P. Poland,* for the defendant.

1.　Treating the defendant as a subsequent mortgagee.　The mortgage of Gay & Orcutt to Colby, so far as it was made to secure any debt to Colby, was as vague and uncertain as possible. It gave no information whatever as to the character or amount of the debt, or when, or how payable.　The most that can be claimed for it, is that subsequent purchasers, or incumbrancers, were put on inquiry by it.　What is the effect upon a party of being put on inquiry ? He is held to have notice of all such facts as proper and reasonable inquiry would bring to his actual knowledge.　In

this case the defendant made inquiry of both the mortgagor and mortgagee, and was informed that there was nothing due to Colby ; that he was paid. What more inquiry was the defendant bound to make ? Who else should he inquire of ? Was the defendant bound to inquire of everybody ? In *Seymour* v. *Darrow et al.* 31 Vt., no inquiry was made of the mortgagee ; and the court said that his absence, at the time, was not a sufficient excuse for not inquiring of him. The court also lay stress on the fact that Brainerd, the subsequent mortgagee, made no advance of money on the property, only took a mortgage to secure an antecedent debt. *Seymour* v. *Darrow* affords no aid to the orator, whether that case was rightly decided or not.

Here inquiry was made of the mortgagee himself.

The defendant made advances of money on the security of a mortgage of the property.

2. If the notes for the purchase money to Colby had been named in the mortgage, or if defendant had notice that such notes were outstanding, the property, being partnership property, was first liable for the payment of the partnership debts. Colby had nothing in the property, and could take nothing out of it for himself, till the partnership debts were all paid. The defendant is the holder of partnership debts to the amount of about $3,500 ; and is entitled to priority. *Washburn et al.* v. *Bank of Bellows Falls,* 19 Vt. 278.

The opinion of the court was delivered by

VEAZEY, J. When Colby, of the firm of Colby, Gay & Orcutt, sold his third interest to his partners, Gay & Orcutt, the latter gave a mortgage to Colby and Blake, (Blake having formerly been a partner in the business with Colby and Gay, and had sold his interest to Orcutt), conditioned that " Gay and Orcutt, their heirs, etc., should pay or cause to be paid, and save the said Colby and Blake, or either of them, harmless from all liability of any kind or description, from any debts or liabilities of the late firm of Colby, Gay & Blake, and the firm of Colby, Gay & Orcutt; and should also pay to said Colby the balance which should be due him on the purchase of said property, by deed dated February 29th,

1876." At that time, Gay and Orcutt gave Colby seven notes for the purchase price; six of them have been paid, and the orator holds the other.

The defendant had furnished the several firms with money, including the last one, Gay & Orcutt; and in May, 1877, more than a year after said mortgage to Colby & Blake was executed, took a mortgage of Gay & Orcutt, of the premises in question, and other partnership property, conditioned for the payment to the defendant of all debts and demands, of every kind and character then due, or that might thereafter become due from them.

At that time, they were indebted to the defendant for a considerable amount, including what they had assumed of the indebtedness of the former firms, and wanted further accommodations for the purposes of their business, which consisted of the manufacture and sale of lumber, and was a continuation of the same business as that of the former firms. Under these circumstances, and for the purposes expressed in the condition, the defendant's mortgage was executed. Gay & Orcutt afterwards failed, and are insolvent.

It is established by the evidence, that before the defendant bank took said mortgage, its president, Judge POLAND, who was the only officer of the bank that had to do with this transaction, examined the record of the mortgage to Colby & Blake, which may be termed the orator's mortgage; and then inquired of Colby and Orcutt whether anything was due to Colby for the purchase money, and was informed by both of them, that " it was all paid." The defendant had no information whatever, that any notes were ever given for the purchase price, until this suit was brought. Orcutt was a resident of Vermont, and was the manager of the business of Gay & Orcutt; Mr. Gay being a resident of Connecticut. At the time of said inquiry, Blake lived in California. There is nothing in the evidence to show that either Blake or Gay had any knowledge upon the subject of inquiry by the president of the defendant bank; and the fair and legal inference from the evidence, showing their situation, and their attitude to these mortgages, and to the business and property of said firm, is, that neither of them could have given any information upon the point of inquiry; and no claim is made in argument, that they could; or that the defend-

ant was guilty of any *laches* in not extending its inquiries to these parties.

The question is, which of these two mortgages shall prevail, as between each other, being upon the same property. The orator claims that the defendant did learn that there had been something due to Colby on the purchase price, because Orcutt and Colby informed its president that " it was all paid " ; and that having learned there once was a debt, it took the mortgage at the same peril as though the former mortgage had specified the notes that evidenced the debt.

An examination of the authorities indicates that no state has adopted a more liberal rule than that adopted in Vermont, in behalf of mortgagees, as to the effect of a condition of a mortgage made in general terms, as to the description of the debt intended to be secured.

The late Chief Justice REDFIELD, in *Seymour* v. *Darrow et al.,* 31 Vt. 133, after an extended discussion of the subject, in the light of authorities of other states and of England, says : " All that is now required in this State is that the extent of the mortgage should be described in general terms, ' as all I now owe or may hereafter owe the mortgagee.'    .    .    .    Those interested must then make their inquiries in the proper quarter."

But in this State, as well as elsewhere, all the cases holding even this liberal view, recognize as the learned Chief Justice did in that case, that there is a limit to the inquiry that need be made by a subsequent incumbrancer, where the description is general, and does not specify anything as evidence of the debt, or indicate that it exists, or is to exist in any form of specification. He is, however, put on inquiry by such a mortgage. In Judge POLAND'S dissenting opinion, in *Seymour* v. *Darrow*, he says : " When a man has no certain knowledge of a fact, but is only put on inquiry, he is held to have notice of all such facts as *reasonable diligence* in prosecuting his inquiry in the proper direction would bring to his knowledge." Jones, in his treatise on Mortgages, vol. 1, s. 596, says : " A party wilfully closing his eyes against the lights, to which his attention has been directed, and which, if followed, would lead to a knowledge of all the facts, is chargeable with

notice of every fact that he could have obtained, by the exercise of *reasonable diligence.*" In defining constructive notice, in section 591, the same author uses the term, " ordinary diligence." In *Blaisdell* v. *Stevens*, 16 Vt. 179, and in *Stafford* v. *Ballou*, 17 Vt. 329, the term, " reasonable inquiry," is the one used, to denote the measure of inquiry a party is bound to make, when *put upon inquiry*.

The orator's mortgage was conditioned to secure the payment of the partnership debts of both the former firms, of which Colby had been a partner ; and " also pay to said Colby the balance which should be due him on the purchase money," etc. It omits all statement about notes given for the purchase price, and the language implies that the purchase price, in addition to the debts assumed, was undetermined. It might be much, or little, or nothing, so far as could be inferred from the mortgage, according as those old debts should count up. With notice of such a mortgage, the defendant, holding the paper of the old firms, and being solicited to supply money to Colby's former partners, to enable them to go on with the same business, which it was naturally expected would enable them to pay the debts of Colby, as a former partner, to the defendant, and to pay other creditors, made the inquiry of both Orcutt and Colby, the mortgagor and mortgagee, situated as described, and received the reply as above stated ; and neither of them informed the defendant, that any notes were ever given. In reliance upon that information the defendant took a mortgage, and continued to advance money on the strength of its security. With no mention of any form of indebtedness, and with only such mention of any indebtedness as this orator's mortgage contained, what further inquiry should be required, to constitute reasonable diligence ? It is even difficult to conceive where else the defendant could have gone for information. It would be difficult to lay down a general rule, as to what would constitute reasonable in-. quiry ; and courts have not attempted it. It must vary with the circumstances of each case.

Where the form or specification of the obligation intended to be secured is described, or referred to ; or where the description indicates that the debt is specified in some written form, or is of

such a character that it is practicable to be pursued by inquiry, beyond the parties to the mortgage, and the facts as to its payment determined, the authorities indicate that a purchaser or subsequent incumbrancer proceeds at his peril. The parties to the mortgage have furnished him the means of finding out the facts; therefore, he must find them out. But such is not this case. Here the parties gave no clue to any discovery attainable beyond themselves. Under such circumstances, it seems to us, that inquiry of those parties is the use of that degree of diligence which the law requires; and that, in view of the facts alluded to, the defendant's mortgage should prevail.

This determination of the question discussed renders it unnecessary to look into the evidence objected to, and pass upon its admissibility, as the case turns upon evidence about which no question as to admissibility has been raised.

Neither is it necessary to examine the view of the defendant, that even if it cannot stand upon its mortgage, yet it is entitled to have the partnership property first applied to pay the partnership debts. The orator denies that the rule applies in this case, Colby having sold his interest in the partnership property; and cites, *Case, Receiver* v. *Beauregard et al.*, 99 U. S. Rep. 119; s. c. 7 Reporter, 481.

Under the stipulation filed, the foregoing views entitle the defendant to a decree of foreclosure upon his cross-bill.

The decree of the Court of Chancery, dismissing the orator's bill, is affirmed; and the cause is remanded, with directions to enter a decree for the defendant on the cross-bill, for the amount found due by the master.