# Black River Associates, Inc. v. Lorenz L. Koehler, Fanny Koehler and Donat Dion

[ 233 A.2d 175 ]

April Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 6, 1967

Opinion on Reargument Filed August 15, 1967

*Parker, Ainsworth & Richards* for plaintiff.

*Bernard R. Dick* for defendant Dion on the appeal only.

**Holden, C.J.** The court of chancery for Rutland County has ordered specific performance to enforce the plaintiff's contract to purchase land in the towns of Shrewsbury and Mt. Holly, formerly owned by the defendants Lorenz and Fanny Koehler. While the plaintiff's contract was pending, the Koehlers conveyed the property to the defendant Dion. The decree includes a declaration that the deed from the Koehlers to Dion is null and void and orders that instrument set aside. The defendants Koehler are directed to convey the premises to the plaintiff. Without participation by his co-defendants, Dion appeals. He assigns error to the decree and requests this Court to dismiss the complaint.

During the course of the proceedings before the chancellor it developed that on October 30, 1965, after the action was instituted, but before hearing, the plaintiff's corporate charter was revoked by the secretary of state. This came about from the plaintiff's failure to file its annual report, required by the general corporations law.

11 V.S.A. §423 provides: A corporation, having a capital stock, which fails to file the annual report required by §421 of this title within three months of the date therein required, shall cease to exist and the secretary of state shall notify such corporation of such termination.

If, however, such terminated corporation shall file such annual report within three months of its termination date together with a fee of $25.00, its charter shall be reinstated by such secretary. Such charter may be reinstated by the court of chancery of the county where such corporation has its principal office, upon petition filed within one year of the date required by §421 of this title, and upon condition that it file the annual report required together with the fee of $50.00.

At a special meeting of the plaintiff's stockholders, convened "to get the corporation reinstated in the State of Vermont," it was voted to "refile Articles of Association of Black River Associates with Secretary of State." This was done on May 4, 1966, with the announced purpose "to reinstate its charter heretofore revoked by the Secretary of State." No corporate stock was issued. There has been no affidavit filed by the officers of the new association of proposed issue of corporate stock, nor any certificate of capital paid in, required by 11 V.S.A.

§§267-269. Yet during an adjournment of the hearing of the present cause, the plaintiff undertook to assign to the successor corporation all its interest in the Koehler property in Mt. Holly and Shrewsbury, with all rights to the pending proceedings.

The purported assignment was followed by a motion to amend the complaint to allege these facts and to join the new corporation as a party plaintiff. These motions were allowed. Evidence was received to support the amended complaint and the chancellor has found accordingly. The defendant challenges the assignment and right of the plaintiff, or its proposed successor, to maintain this action.

The statute which provides for the termination of a corporation for failure to file its annual report prescribes the procedure to be followed to accomplish reinstatement. 11 V.S.A. §423, *supra.* The methods thus provided are exclusive. The specific requirements of the statute cannot be circumvented by an attempt to organize a new corporation in an effort to keep alive an entity, which the statute has decreed "shall cease to exist." Since the organization of the new corporation was undertaken for a purpose not authorized by the general corporations law, it has no standing in this action. And the effort of the plaintiff to assign its interest in the present action is without legal force or effect.

But these irregularities do not defeat the plaintiff's right to maintain this action. 11 V.S.A. §491 provides:

A corporation whose charter or articles of association expire by their own limitation, or are annulled by forfeiture or otherwise, shall continue a body corporate for three years to enable it gradually to close its affairs, to dispose of and convey its property, to divide its capital stock; and to prosecute or defend suits until such suits and the subject-matter thereof are fully disposed of, but not for the purpose of continuing the business for which it was established.

This authority, incident to winding up its corporate affairs, is in the nature of the administration of a decedent estate and preserves the corporate entity for this restricted purpose. See *Hall* v. *Pilgrim Plywood Corporation,* 126 Vt. 224, 227 A.2d 285, 286.

This statute was a part of the general corporation law when 11 V.S.A. §423 was enacted in 1949. There is no irreconcilable inconsistency in the two enactments. And we perceive no intent by the legislature to deprive a corporation, whose charter has been forfeited for

failure to file an annual report, from the remedial provision of §491 applicable to corporations whose charters are otherwise annulled. Since the provisions of the two enactments can stand together, each section will be given force and effect. *Magwire* v. *Village of Springfield,* 111 Vt. 414, 422, 17 A.2d 260; *O'Rourke* v. *Cleary,* 104 Vt. 312, 318, 158 Atl. 613.

Despite the revocation of its charter, the plaintiff continued as a body corporate for the purpose of administering its corporate assets and liabilities. This action is properly maintained to accomplish that end.

The facts reported by the chancellor are not in serious controversy. In the fall of 1963 the Koehlers engaged the services of a real estate broker, named King, to sell the property at $6,500. On May 26, 1964, as a result of King's effort, the plaintiff signed a written offer to purchase the property at the price requested by the seller. The writing stipulated that the deposit of $500 accompanying the offer was to be applied to purchase price or returned to the plaintiff if the offer was not accepted by the owner. On June 2 the defendants Koehler endorsed their acceptance on the offer of purchase. The Koehlers returned the instrument to the broker with various deeds and maps relating to their title. These papers were delivered to Wallace Schinoski, Esq., an attorney and officer of the plaintiff, for examination of the title and preparation of a deed to the plaintiff. During preparation for the closing, the plaintiff's officer and agent went on the property, conducted surveys, cleared underbrush, dynamited and bull-dozed beaver dams.

In a visit to the property on June 23, Mrs. Dion, the defendant's wife, talked with one Valente, an employee of the plaintiff. On inquiry from Valente, Mrs. Dion disclosed that she and her husband had deposited $750 with a person named Kathan to purchase the Koehler property. The plaintiff's employee informed Mrs. Dion that the plaintiff had purchased the property on June 2. He suggested that Mrs. Dion see Mr. Schinoski about the matter. The next evening Mr. Dion called at Mr. Schinoski's office to inquire about the property and informed the plaintiff's attorney that he had made a deposit of $750 toward its purchase.

Although the chancellor did not report Schinoski's reply to the defendant's inquiry, it appears from the record that the attorney informed Dion that he had been hired to abstract the title and prepare

some deeds to the property. He also stated that he was "working for another party, therefore I can't talk to you and suggest you best see your lawyer." With this, Mr. Dion left.

The chancellor found that the defendant had made the deposit four or five days after Koehlers had accepted the plaintiff's offer to purchase the property. But the findings point out that no evidence was introduced to indicate in what capacity Kathan was acting when he accepted the payment by Dion.

The Koehlers executed a deed to convey the property to Dion on June 26, 1964. The instrument recited the consideration for the grant was $7,500. Dion took possession of the property after receiving the grant from the Koehlers.

The chancellor decided that neither the plaintiffs nor Dion knew of the other's deposit on the property until June 6, 1964. However, he reported in his findings that at the time the deed was accepted, Dion knew the plaintiff was claiming the property by virtue of its agreement with Koehler of May 26.

Dion's visit to Schinoski, following Valente's suggestion to Mrs. Dion of the day before, permits the inference that Mrs. Dion reported to her husband the substance of the conversation. It also appears without contradiction that both Mr. and Mrs. Dion were interested in the property and joined in the payment to Kathan. Thus knowledge acquired by Mrs. Dion would be notice to her partner in the venture. See *Manatee Loan & Mortgage Co.* v. *Manley's Estate,* 106 Vt. 356, 362, 175 Atl. 14; 30 Am. Jur., Joint Adventures §55.

With the sellers' acceptance of the plaintiff's offer to purchase the subject property, the plaintiff became the owner in equity. Equitable title must be respected by the parties to the sale, and by every subsequent purchaser who has notice of it. *Dutton* v. *Davis,* 103 Vt. 450, 452, 156 Atl. 531; *Vermont Marble Co.* v. *Mead & Eastman,* 85 Vt. 20, 34, 80 Atl. 852.

There is no finding that the defendant had actual knowledge of the provisions of the plaintiff's agreement. Such notice is not essential. If Dion had sufficient facts concerning the plaintiff's interest in the property to call upon him to inquire, he is charged with notice of such facts as diligent inquiry would disclose. *Farmers Exchange* v. *Lowney Co.,* 95 Vt. 445, 450, 115 Atl. 507; *Passumpsic Savings Bank* v. *First National Bank,* 53 Vt. 82, 89, 56 Atl. 179.

No rule can be established to determine what facts are sufficient to require further inquiry. It was appropriate to inquire of the plaintiff who appeared to be in possession. *Canfield* v. *Hard,* 58 Vt. 217, 223. Under the circumstances it was equally important to inquire of the seller. And a failure to do so has been regarded as a lack of due care. See 2 Pomeroy, Equity Jurisprudence §607, n. 2. The question must be resolved from the circumstances prevailing in each particular case. *Farmers Exchange* v. *Lowney Co., supra,* 95 Vt. at 450; *Passumpsic Savings Bank* v. *First National Bank, supra,* 53 Vt. at 89; 2 Pomeroy, Equity Jurisprudence §607 (4th Ed.).

There can be no question that the defendant's visit to Schinoski's office was motivated by what he learned about the plaintiff's interest in the Koehler property. His brief concedes as much. However, he maintains that the failure of Schinoski, as the plaintiff's representative, to make full and complete disclosure of the details of the plaintiff's dealings with Koehler put an end to the defendant's obligation to pursue the matter further.

From our reading of the record we find nothing in Mr. Schinoski's guarded reply to the defendant's inquiry that was misleading. Neither was there anything about it to induce the inquirer to believe he could ignore the information that brought him to Schinoski's office.

It seems plain from what was said, that the attorney felt he was not at liberty to discuss the problem with the defendant whose interest obviously was in competition with that of his client. The suggestion to the defendant that he consult his attorney, was no assurance the way ahead was free from danger. It indicates a warning of future legal complications. These circumstances were sufficient to persuade the chancellor that reasonable diligence required further investigation to obtain the information which Schinoski felt he could not disclose.

These considerations are of equal force to repel the defendant's claim of estoppel. He asserts that Schinoski's failure to explain the substance of the plaintiff's contract with the Koehlers, estops it from claiming it now. In order to work an estoppel in such a situation, it must appear that the plaintiff's silence about its contract was misleading. *Wooley* v. *Chamberlain,* 24 Vt. 268, 274.

The burden of proving estoppel rests on the party claiming it. It was essential for the defendant to establish that he was misled, in reliance on the plaintiff's conduct in the matter. *Watkins' Estate* v. *Howard National Bank,* 113 Vt. 126, 137, 30 A.2d 305; *West River*

*Power Co.* v. *Bussino,* 111 Vt. 137, 139, 11 A.2d 263. The findings are silent as to this and we have found no evidence to support the point.

The chancellor's findings do sustain Dion's contention that he had no notice of the plaintiff's interest in the Koehler property at the time he paid the initial deposit on the purchase price. Hence the defendant claims his equitable interest in the property was equal to that of the plaintiff under its contract with Koehler. He insists that, despite any prior notice, he was entitled to protect his equitable interest in the property by acquiring the legal estate.

It is sometimes true that where the equities are equal, the party who first fortifies his equitable interest with the legal title will prevail. *Downer* v. *So. Royalton Bank,* 39 Vt. 25, 30. This rule is subject to the limitation that "—(i)n examining into the relative merits (or equities) of two parties having adverse equitable interests, the points to which the court must direct its attention are obviously these: the nature and condition of their respective equitable interests, the circumstances and manner of their acquisition, and the whole conduct of each party with respect thereto. And in examining into these points, it must apply the test, not of any technical rule, or any rule of partial application, but the same broad principles of right and justice which a court of equity applies universally in deciding upon contested rights." 2 Pomeroy, Equity Juris., 5th ed., §414.

But here the defendant has not established that his interest in the Koehler property prior to the grant was on equal footing with the plaintiff's contract. The defendant offered no evidence of his contract. The findings refer only to what might be regarded as a fractional down payment on the purchase price. We cannot infer, against the decree, that the bare payment of $750 to Kathan, whose identity and connection with the seller are unknown, created a valid and enforceable equity, capable of overriding the plaintiff's prior contract.

Before Dion took Koehler's deed he knew the plaintiff claimed an interest in the property. He received this notice after paying only a fraction of the purchase price. The substantial balance of the consideration for the deed was yet unpaid. After receiving notice that Koehler had a prior undertaking with the plaintiff, the defendant could not improve his position by further payment. And such payment will not protect his legal title as a bona fide purchaser for value. *Lamoille County Savings Bank* v. *Belden,* 90 Vt. 535, 541, 98 Atl.

1002; *Westpark, Inc.* v. *Seaton Land Co.,* 225 Md. 443, 171 A.2d 736, 743; Restatement, Trusts 2d §302; 55 Am. Jur., Vendor and Purchaser §747.

Except for the initial payment, the defendant's standing is the same as that of his grantor Koehler. And equity will require him to perform the contract by a proper conveyance to the plaintiff in the same manner and to the same extent as Koehler would be required to do, had he not transferred legal title. "And every subsequent purchaser from either, with notice, is subject to the same equities as would be the party from whom he purchased." *Wilkins* v. *Somerville,* 80 Vt. 48, 53-54, 66 Atl. 893.

The plaintiff has established its right to equitable relief. It appears that some details of the decree should be modified to meet certain changes occurring since the date it was first entered. Remand will be ordered to accommodate that purpose.

*Decree affirmed with modifications. Cause remanded for entry of a new decree consistent with the opinion.*

## On Defendant's Request For Reargument

**Holden, C.J.** The defendant Dion seeks rehearing of this appeal on the strength of what he claims to be the theory upon which the trial proceeded below. This aspect of the motion contends this Court acted on its own initiative in sustaining the plaintiff's right to maintain this action under 11 V.S.A. §491 after its corporate charter had been revoked for failure to file its annual report. He argues that this issue was not available for review since the court below and counsel acquiesced in the theory that the first Black River Corporation had no standing in the chancery court and this misconception became the "law of the trial," binding this Court in the disposition of the case on appeal.

The defendant argues that the application of this rule requires a reversal of the decree. And since we held the assignment of the second corporation to be without force and effect, the entire cause should be dismissed for want of a plaintiff who could maintain the action.

By this reasoning, the defendant calls upon the Court to bar the action on an issue that should have been raised by a proper pleading at the first opportunity. By proceeding to trial without a plea of *nul tiel* corporation, or a motion to this effect, by way of answer, the issue

was waived and not properly before the Court. *Hendy Bros., Inc.* v. *Tucker,* 126 Vt. 280, 229 A.2d 301, 303.

The doctrine of the "law of the trial" applies to rulings by the court below, which are accepted by all parties without objection. It may apply, too, where the trial proceeds on a certain theory in which the court and the parties are impliedly agreed. But the rule is merely one of appellate practice and subject to the power of the court to depart from it in a proper case. *Perkins* v. *Hydro-Electric Corp.,* 106 Vt. 367, 415-417, 177 Atl. 631. The record here affords no justification for the application of the rule.

The evidence which established that the plaintiff's corporate charter had been revoked was erroneously interjected into the complainant's case by the defendant. It was received as the defendant's exhibit A, but over the plaintiff's timely objection and exception. There was no acquiescence by the plaintiff that this question should become an issue in the case.

In an obvious attempt to meet this problem, the plaintiff amended its complaint and introduced evidence of the formation of the second Black River Corporation and the purported assignment of the pending action to the successor corporation. All of this was opposed by the defendants. There was no common or mutual acquiescence in any of the rulings involved in this development of the trial.

The defendant complains that this turn of events misled him in the conduct of his defense. He refers us to a question asked by the chancellor and directed to plaintiff's counsel "as to why this action could not be maintained in the name of the old corporation under the section (11 V.S.A. §491) you just referred to?" Counsel for the plaintiff indicated it might have been so maintained except for its assignment to the second corporation.

The defendant represents that this concession by plaintiff's counsel caused him to forego his defense on the merits and concentrate on the invalidity of the assignment. If these considerations led the defendant to abandon his defense to pursue a dilatory matter, it was a tactic of his choosing.

The defendant was given full opportunity to present his defense against either or both plaintiffs. When called upon by the chancellor to proceed with his proof, he elected to rest his cause at the conclusion of the plaintiff's evidence. Later in the trial, when the court continued the cause to allow the plaintiff to produce further evidence in support

of its amendment to the complaint, it relieved the defendants from having rested their case—so that if either defendant desired to introduce further evidence when the court reconvened, they were at liberty to do so. Having declined this opportunity of presenting evidence on the merits of the controversy, the defendant's claim that he was misled in this respect, is unavailing.

The remaining point of the defendant's motion refers to evidence upon which he claims an equity equal or superior to that created by the plaintiff's executory contract of sale. The evidence, which the defendant asserts was overlooked or misapprehended, appears in the testimony of one of the plaintiff's employees in relating that the defendant's wife had told him—"we had made a $750 deposit and have bought this property." We take this statement to mean only that the defendant and his wife believed they had "bought" the property by their deposit of $750. This apparently was the construction afforded by the chancellor. The defendant's equity at this point of time was not the equivalent of the plaintiff's option which had already ripened into a binding contract. If the defendant had done anything more than make a partial payment, it was incumbent upon him to present evidence to this effect. Without such proof, the bare payment of a deposit to some person unknown cannot effectively compete with the contract of sale exhibited by the plaintiff.

Insofar as the motion seeks to challenge the provision in the plaintiff's contract concerning liquidated damages, he advances a question that was not presented in his original brief. It is inappropriate for reargument.

Since the opinion and entry order have been withheld pending disposition of the motion for reargument, we have taken the occasion to revise the next to the last paragraph of the opinion. This revision does not affect the result.

*Request for reargument denied. Let full entry go down.*