# In re Eastland, Inc.

[562 A.2d 1043]

No. 87-302

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed May 5, 1989

*Kristensen, Cummings, Murtha & Stewart,* Brattleboro, for Appellant.

*Robin Stern* of *Gale, Gale & Corum,* Brattleboro, for Appellee.

*Jeffrey L. Amestoy, Attorney General,* and *Conrad W. Smith, Assistant Attorney General,* Montpelier, for amicus curiae State of Vermont.

**Morse, J.** Eastland, Inc. appeals a decision of the Environmental Board requiring an Act 250 permit for a subdivision in the Town of Grafton. We affirm.

The essential facts are not in dispute. On May 2, 1985, Eastland, a corporation engaged in the business of marketing land, entered into an agreement with Norman Tuttle for the purchase of 81.9 acres of land in Grafton. The parcel had not been subdivided prior to the execution of the sales agreement, and the agreement makes no reference to a subdivision. On May 20, 1985, at Eastland's request, the parcel was surveyed by DiBernardo Associates, dividing the parcel into eight lots. The sales price of the property was increased to include the cost of the new survey. On June 12, 1985, Mr. Tuttle conveyed to Eastland by deed the en-

tire 81.9 acre parcel with an addendum describing the eight lots as shown on the survey. The Property Transfer Tax Return prepared at this time, however, made no reference to an existing subdivision. Subsequently, Eastland sold all eight lots in the subdivision to separate parties.

Title 10 V.S.A. § 6081(a) requires that a permit (a so-called Act 250 permit) be obtained prior to the sale of any interest in any subdivision located in Vermont. At the time relevant to these events, the term "subdivision" was defined in the statute as:

> a tract or tracts of land, *owned or controlled* by a person, which have been partitioned or divided for the purpose of resale into 10 or more lots within a radius of five miles of any point on any lot, and within any continuous period of 10 years . . . .

10 V.S.A. § 6001(19) (emphasis added).[1] During the months prior to the purchase of the Tuttle land, Eastland had subdivided into six lots another parcel in Grafton about a mile distant. It is not disputed by the parties that Eastland would be required to obtain a permit under § 6081 if the current subdivision was made while Eastland "owned or controlled" the land, since, along with the previous transaction, it then would have created more than ten lots for the purpose of resale within a five-mile radius in the requisite period. The Environmental Board concluded that Eastland did control the land for purposes of Act 250 jurisdiction, and ruled accordingly.

Eastland challenges the Board's construction of the statute, maintaining that since it was not the record titleholder of the property at the time the May 20, 1985 subdivision plan was drawn and could not force Mr. Tuttle to accomplish the subdivision, it did not therefore control the property for purposes of Act 250.

The Town of Grafton and the State of Vermont, as amicus, argue that the Board's construction of the term "controlled" is correct, and that the Board's finding that Eastland controlled the land at the time in question is supported by the record. In the alternative, they argue that Eastland was in fact the owner of the property for purposes of the Act at the time of its subdivision,

---

[1] The subsection was amended in 1987. The changes are not relevant to this appeal.

because the subdivision plan was not filed in the town clerk's office until after the closing. Because we affirm the Board's decision on the issue of control, we need not decide the issue of ownership.

Even if Eastland did not "own" the parcel for purposes of the Act, it exercised sufficient control at the time of the subdivision to bring the parcel under Act 250 jurisdiction as intended by the Legislature.

█ The Legislature created the Enviornmental Board "in order to protect and conserve the lands and the environment of the state and to insure that these lands and enviroment are devoted to uses which are not detrimental to the public welfare and interest." An Act to Create an Environmental Board and District Environmental Commissions, Pub. Act No. 250, § 1, 1970 Vt. Laws (Adj. Sess.) 237. To accomplish these tasks, the Board was conferred "the power to regulate the use of lands and to establish comprehensive state capability, development and land use plans" as provided by the terms of the statute. *Id.* In light of this delegation of power, the Board must be afforded broad deference in its interpretation of Act 250. "It is a 'venerable principle that construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong.'" *Committee to Save the Bishop's House, Inc.* v. *Medical Center Hospital of Vermont, Inc.*, 137 Vt. 142, 150-51, 400 A.2d 1015, 1019-20 (1979) (quoting *Red Lion Broadcasting Co.* v. *Federal Communications Commission,* 395 U.S. 367, 381 (1969)). Applying this deferential standard of review, we have upheld a number of Environmental Board interpretations of Act 250. See, e.g., *In re Vitale,* 151 Vt. 580, 563 A.2d 613 (1989); *In re Spear Street Associates,* 145 Vt. 496, 499-501, 494 A.2d 138, 140-42 (1985).

Eastland insists that the word "controlled" denotes legal control. We disagree. It is true that we will enforce a statute according to its plain meaning, *Paquette* v. *Paquette,* 146 Vt. 83, 86, 499 A.2d 23, 26 (1985), but the meaning of "controlled" in § 6001(19) is not entirely plain. Indeed, appellant's restrictive reading, if correct, would effectively make the term "controlled" superfluous. This reading contravenes our well-established rule that "[i]n construing a statute, every part of the statute must be considered, and every word . . . given effect if possible." *State* v. *Stevens,* 137 Vt. 473, 481, 408 A.2d 622, 627 (1979).

█ The Board's ruling is consistent with the definition of the verb "control" found in Black's Law Dictionary: "To exercise re-

straining or directing influence over. To regulate; restrain; dominate; curb; to hold from action; overpower; counteract; govern." Black's Law Dictionary 298 (5th ed. 1979). The Board found several facts, uncontested here, that support its conclusion that Eastland controlled the land by exercising a restraining or directing influence over it. Eastland had made arrangements with the surveyor, chosen the number of subdivisions to create, directed where the survey lines should be drawn, and paid for the survey. Futhermore, once the sales contract was signed, Eastland was equitable owner of the parcel, giving Eastland certain rights in the land. See *Troy* v. *Hanifin,* 132 Vt. 76, 81, 315 A.2d 875, 878 (1974); *Black River Associates, Inc.* v. *Koehler,* 126 Vt. 394, 399, 233 A.2d 175, 179 (1967) (equitable owner has rights over subsequent purchaser with notice).[2] The seller received no tangible benefit from the subdivision; its sole purpose was to enable Eastland to escape the burdens of Act 250. The subdivision also cost the seller nothing; it was a small favor in the interests of concluding a harmonious business transaction. Under these circumstances, Eastland's status as equitable owner conferred upon it sufficient control to induce the seller to assist Eastland by subdividing the property as Eastland wished.

The Board's construction of the term "controlled" is also in accord with the legislative intent of Act 250. Eastland urges to the contrary that the legislative history of Act 250 suggests a narrow meaning of "controlled," noting a remark by Representative Hackett that "development means the use or intended use of a tract of land which aggregate ten acres or more within a radius of five miles in which a person is a *record holder of a legal title.*" Remarks of Rep. Hackett, Minutes of House Appropriations Committee (Feb. 23, 1970) (emphasis added). This one citation in support of a narrow definition, however, does not persuade us to reverse the Board. First, the remark concerned the meaning not of "subdivision" but of "development," an issue ancillary to this case. Second, and more important, the statute in final form does not expressly limit Act 250 jurisdiction to record holders of legal title for either development or subdivision purposes. 10 V.S.A. § 6001(3), (19). Rather, the Legislature clearly expressed its intent to regulate both development and subdivisions of land owned *or*

---

[2] We do not decide whether Eastland's status as equitable owner alone triggered Act 250 jurisdiction.

*controlled* by a person. *Id.* The fact that the Legislature refrained from adopting the restrictive language urged by one member of the House Appropriations Committee and instead explicitly selected words of broad reach indicates that it had no intention of adopting Representative Hackett's preferred meaning.

Finally, the Board's ruling is consistent with our recent holding in *In re Vitale.* In *Vitale,* the petitioner sought to evade Act 250 jurisdiction by delaying the purchase of a 1.57-acre parcel of land so that the seller could first subdivide the lot into a .99-acre parcel and a .58-acre parcel. The petitioner then purchased the two lots in separate transactions. At issue was the meaning of "development" as defined by Act 250 — if petitioner's project constituted a development for purposes of the Act, a permit would be required. The Board interpreted the term "development" in light of Environmental Board Rule 2(A)(2)[3] and concluded that petitioner had exercised *control* over the full 1.57 acres at the time the project was built, sufficient to trigger Act 250 jurisdiction, even though he had not yet obtained legal title to the smaller parcel. *Vitale,* 151 Vt. at 582, 563 A.2d at 615. In upholding the Board's ruling, this Court noted several facts that indicated control over the entire property. *Id.* at 584-85, 563 A.2d at 616. Petitioner had suggested the subdivision, carried out the survey, and obtained the permits. There was no direct access to the smaller parcel, and thus it could have little value to any buyer other than the owner of the larger parcel. The petitioner clearly intended to buy both lots: When he accepted the deed to the larger lot, he paid the full purchase price originally agreed upon by the parties for the entire 1.57-acre property. Conveyance of the smaller parcel occurred less than a month later, with no additional consideration paid. "For all practical purposes, petitioner controlled the .58-acre lot, although legal title remained in the seller." *Id.* at 585, 563 A.2d at 616.

---

[3] Board Rule 2(A)(2) provides that:

(A) A project is a "development" if it satisfies any of the following definitions:

. . . .

(2) The construction of the improvements for any commercial or industrial purpose, including commercial dwellings, which is located on a tract or tracts of land of more than one acre *owned or controlled* by a person . . . . In determining the amount of land, the area of the entire tract or tracts of involved land *owned or controlled* by a person will be used. (Emphasis added.)

While the instant case involves a different section of Act 250 than the one at issue in *Vitale,* the Board's analysis and conclusions are similar in both cases. We conclude that the Environmental Board's construction of its own enabling legislation was reasonable and proper, and we therefore affirm its decision to require an Act 250 permit for the Eastland subdivision.

*Affirmed.*

**Peck, J.,** concurring. I agree with the result reached in this case. I write separately for the sole purpose of objecting to the Court's reliance on *In re Vitale,* 151 Vt. 580, 563 A.2d 613 (1989). I dissented strongly in that case, primarily on the grounds that the "active" control required by the majority opinion itself was not present, and the incidents which the Board and the majority of this Court relied on for that purpose did nothing of the kind.

The opinion in this case recites those incidents at some length. Since I believe my dissent more than refuted the majority claim, that these incidents demonstrated the slightest degree of active control, time constraints militate against a rehash of the dissent. The majority opinion and the accompanying dissent have been issued and are available for examination.

In this case, however, the element of active control, while thin at best, appears at least minimally adequate to sustain the Board and its order. That being so, reliance on *Vitale,* is unnecessary. The case approved amending legislation by Board rule; reliance thereon may well embolden the Board to test the outer limits of its jurisdiction even further. I am, therefore, disappointed that the Court's opinion has seen fit to perpetrate the egregious result reached in *Vitale,* particularly since it is not necessary to do so in order to reach the end result here.