Tanner v. Gold, No. 358-6-04 Wncv (Katz, J., Feb. 25, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                   SUPERIOR COURT
Washington County, ss.:


TANNER                                    Docket No. 358-6-04 Wncv

v.

GOLD


TUDHOPE                                   Docket No. 359-6-04 Wncv

v.

GOLD


BARTLETT                                  Docket No. 360-6-04 WnCv

v.

GOLD



ENTRY


These three, effectively identical petitions by prisoners for good time credit (Earned Reduction of Term) raise a close question of statutory interpretation: Does 28 V.S.A. § 811(c) express automatic loss-of-opportunity credit for § 811(d) work camp?

For sure, the statutory sentence includes the term "work" in its

direction to afford inmates credit for opportunities appropriate for them but unavailable due to limitations of the Department.  28 V.S.A. § 811(c).  In its argument, the Department does not really deal with the presence of that term or offer a reason why it is included in the statute, if it does not apply to a situation such as that presented by these cases.  Statutory interpretations that render words superfluous are disfavored.  In re South Burlington-Shelburne Highway Project, 174 Vt. 604, 606 (2002).

Nevertheless, other considerations point in the opposite direction.  In setting out the fifteen-days-per-month credit of § 811(d), the Legislature in several ways has sought to separate that credit from other parts of the statute.  Linguistically, the provision commences with "notwithstanding," surely implying either an exception or somehow different scheme from what precedes it.  See Black's Law Dictionary 1091 (7th ed. 1999) (defining "notwithstanding" as "[d]espite; in spite of").  Graphically, the use of boldface "**Work camps**" suggests a discrete category, perhaps thereby indicating a different treatment.  We are unaware of such a general style of boldface type in subparagraphs in Vermont's statutory compilation, but note that it does appear in the statute governing prison furloughs, 28 V.S.A. § 808(f) and (g).

Perhaps this last indication segues into the final consideration.  Administrative agencies generally are accorded some deference in the interpretation of their respective governing statutes.  In re Eastland, Inc., 151 Vt. 497, 499 (1989); 3 Charles H. Koch, Jr., Administrative Law and Practice § 11.25, at 126-30.  Perhaps originally such deference stemmed from a presumption that the agency had the most time to study the language or understand its proper context.  In contemporary terms, courts would be naive to overlook the reality that Department personnel probably hovered over the committee giving birth to the language–indeed, they probably authored it in the first place.  While this reality should not lead courts to surrender the obligation of interpretation to the agency involved, it supports the deference previously noted.  In a situation in which the Department's

2

governing statutes seem to have wandered into their own, unique graphic style, this consideration seems to assume greater weight.

Taking these several factors into consideration, and keeping in mind that the ultimate goal is to ascertain the intention of the enacting Legislature, <u>Russell v. Armitage</u>, 166 Vt. 392, 403 (1997), we conclude that the Department's position is the stronger one, although not free from doubt. Summary judgment therefore is entered for defendant.  Petitions dismissed.

Dated at Montpelier, Vermont, _____, 20__.


_____
Judge