New England Youth Theatre, Inc. v. Envtl. Compliance Servs., No. 138-4-12 Wmcv (Carroll, J., Feb. 26, 2013)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Windham Unit** | **Docket No. 138-4-12 Wmcv** |

**New England Youth Theatre, Inc.,**
 **Plaintiff**


 **v.**


**Environmental Compliance Services, Inc.,**
**Joseph S. Pieciak, Jr., Elm Street Realty, Inc.,**
**and Corner Realty, Inc.**
 **Defendants**

### Decisions on Motion to Dismiss and Motion to File Surreply

### Factual Background

Defendant, Environmental Compliance Services, Inc., moves to dismiss Plaintiff's claims for professional negligence and negligent misrepresentation. On August 30, 2012, the Court granted Defendant's first motion to dismiss. The current motion raises new legal issues and requires separate consideration. The Court relies on the facts provided by Plaintiff for this motion.

Joseph Pieciak owned and controlled Elm Street Realty and Corner Realty. In 1994, he used Elm Street Realty to purchase Lot 56 in Brattleboro. In 1997, Pieciak used Corner Realty to purchase Lots 54 and 55. Before purchasing the lots, Pieciak had ERD Environmental (ERD) conduct environmental site assessments. In 1996, ERD issued reports to Pieciak that did not identify all of the environmental problems with the lots.

In 2002, Pieciak requested Banknorth refinance his debts in regard to the lots. Banknorth required Pieciak to obtain more recent environmental assessments. In 2003, Pieciak hired Environmental Compliance Services (ECS), Defendant, to update ERD's reports. Defendant conducted the environmental assessments in the winter of 2004. Defendant relied on the parts of ERD's reports and also failed to observe all of the environmental issues associated with the sites.

In 2006, New England Youth Theatre (NEYT), Plaintiff, signed a purchase and sale agreement with Pieciak for all three lots. Chittenden Bank, NEYT's lender, required NEYT to obtain assurances about potential environmental liabilities of the sites. Pieciak referred NEYT to the 2004 ECS reports. NEYT did not know of any environmental risks at the time of purchase. In 2007, the Vermont secretary of state involuntarily terminated Elm Street Realty and Corner Realty for failure to file an annual report. The corporations have not been reinstated.

In 2008, Plaintiff wanted to sell a portion of the property to Fulcrum Arts. Fulcrum Arts hired KAS and GCM Environmental to conduct new environmental assessments. The new environmental consultants found significant environmental liabilities on the properties. Fulcrum backed out of the deal. NEYT now works with the Vermont Department of Environmental Conservation and the Environmental Protection Agency to develop a corrective action plan.

The first motion to dismiss concerned Plaintiff's direct claims against Defendant for professional negligence and negligent misrepresentation. The Court granted the motion to dismiss because Plaintiff lacked privity or near privity of contract with Defendant. The amended complaint alleges Pieciak assigned any claims against ECS to NEYT as part of a settlement. Plaintiff now makes claims for professional negligence (Count III), negligent misrepresentation (Count IV), and breach of contract (Count V) as an assignee from Pieciak.

### Procedural History

Defendant filed this motion to dismiss (Motion No. 4) on August 17, 2012. Plaintiff opposed the motion on September 7, 2012. Defendant filed a response to Plaintiff's opposition on September 24, 2012. Plaintiff filed a motion for permission to file a surreply on October 9, 2012 (Motion No. 6). On the same day, Plaintiff also filed the surreply. On October 22, 2012, Defendant opposed Plaintiff's motion to file a surreply and addressed the merits of the surreply.

### Standard of Review

The Court disfavors and rarely grants motions to dismiss. *See Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575. The Court uses motions to dismiss to evaluate the law in a pleading. *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002). Accordingly, the Court will only grant a motion to dismiss when there are "no facts or circumstances, consistent with the complaint that would entitle Plaintiff to relief." *Bock*, 2008 VT 81, ¶ 4. "[T]he threshold a Plaintiff must cross in order to meet our notice-pleading standard is 'exceeding low.'" *Id.* (quoting *Henninger v. Pinellas County*, 7 F. Supp. 2d 1334, 1336 (M.D. Fla. 1998)). The Vermont Supreme Court continues to apply a relaxed notice-pleading standard. *Bock*, 2008 VT 81, ¶ 5, n. For this motion, the Court assumes the truth of all facts offered by the non-moving party. *Id.* at ¶ 4.

### Discussion

Defendant moves for dismissal on four grounds: (1) terminated corporations may not assign tort claims; (2) professional negligence and negligent misrepresentation claims do not fall under Vermont's survival statute; (3) the assignment of these claims violates public policy; and, (4) Plaintiff failed to assert a valid claim for professional negligence. The Court will respond to each of Defendant's arguments and then evaluate whether to accept Plaintiff's surreply.

1.  An Involuntarily Terminated Corporation's Power to Assign Claims

The first issue raised by this motion is whether terminated corporations may assign claims. The secretary of state will terminate a corporation for failure to file an annual report. 11A V.S.A. § 14.20(a). An involuntarily terminated corporation may prevent a proceeding against the

corporate name, suspend a proceeding by or against the corporation that was pending at the termination date, and terminate the authority of the corporation's registered agent. *Id.* § 14.20(d). The dissolved corporation may do anything "necessary to wind up and liquidate its business and affairs." *Id.* § 14.05(a)(5). A dissolved corporation lacks the enumerated powers granted to an involuntarily terminated corporation in § 14.20(d). *See id.* §§ 14.05(b)(5)–(7).

The parties dispute the meaning of section 14.20. Defendant argues 14.20(d) is an exclusive list of the powers of an involuntarily terminated corporation. In contrast, Plaintiff argues the list is not exclusive and the Court should treat terminated corporations like dissolved corporations. The powers explicitly granted to involuntarily terminated corporations are denied to dissolved corporations. *Compare id.* § 14.05(b)(5)–(7), *with id.* § 14.20(d). The legislature's extension of additional powers to terminated corporations suggests terminated corporations also have the powers of dissolved corporations. Furthermore, the powers granted to nonprofit corporations and a case interpreting an older version of the statutes indicate a terminated corporation may assign its claims. *See* 11B V.S.A. §§ 14.05, 14.20, 14.21; *Daniels v. Elks Club of Hartford*, 2012 VT 55, ¶ 57, n. 15; *Black River Ass'n v. Koehler*, 126 Vt. 394, 397–98 (1967).

For guidance on what powers terminated corporations have, the Court may look to Title 11B, which applies to nonprofit corporations. *See Daniels*, 2012 VT 55, ¶ 57, n. 15. In *Daniels*, the Vermont Supreme Court evaluated the liabilities of a terminated non-profit corporation and its members. *See id.* ¶ 2. Although the Court decided the cases on other grounds, a footnote provides a clue on the court's interpretation of both Title 11A (business corporations) and Title 11B (nonprofit corporations). The court noted: "Although the statues applicable to business corporations and those applicable to nonprofit corporations have some language difference, the substance of the current statutes is essentially the same." *Id.* at n. 15.

The nonprofit corporations statute suggests a terminated corporation may assign claims. The secretary of state may dissolve a nonprofit corporation for failing to file a biennial report. 11B V.S.A. § 14.20(2). A dissolved nonprofit corporation may also do "every other act necessary to wind up and liquate its assets and affairs." *Id.* § 14.05(8). Thus, a nonprofit corporation that fails to file the proper report assign claims. To the extent nonprofit corporations and business corporations have parallel powers, a terminated business corporation may also assign its assets. *See Daniels*, 2012 VT 55, n. 15.

*Black River*, which interpreted a predecessor statute, also suggests a terminated corporation may assign claims. 126 Vt. at 397–98. In *Black River*, the secretary of state dissolved a corporation for not filing an annual report.[1] *Id.* at 396. Nevertheless, the court allowed the assignment because another provision of the statute allowed a terminated corporation "three years to enable it gradually to close its affairs, to dispose of its property…" *See id.*; *see also* 11 V.S.A. § 491 (repealed in 1971). The court "perceive[d] no intent by the legislature to deprive a corporation, whose charter has been forfeited for failure to file an annual report, from the remedial provisions of § 491 applicable to corporations whose charters are otherwise annulled."

---

[1] 11 V.S.A. § 423, which was repealed in 1971, indicated: "A corporation, having a capital stock, which fails to file the annual report required by section 421 of this title within three months of the date therein required, shall cease to exist and the secretary of state shall notify such corporation of such termination." *See Black River*, 126 Vt. at 396.

*Black River*, 126 Vt. at 397–98. The authority to assign claims is part of the power of winding up a corporation. *Id.* at 397.

In the instant case, Elm Street Realty and Corner Realty could assign claims under 11A V.S.A §§ 14.05, 14.20. The statutory language suggests section 14.20(d) gives terminated corporations powers that exceed dissolved corporations. Terminated corporations therefore maintain the powers of dissolved corporations in addition to their section 14.20(d) powers. Moreover, reading the nonprofit corporations act and the business corporation act together indicates terminated corporations have the powers of dissolved corporations. Finally, *Black River's* interpretation of the predecessor statute also supports reading these statutes to grant involuntarily terminated corporations the power to assign claims as part of the powers to wind up the corporations.

2. Survival of the Causes under 14 V.S.A. § 1451

The next issued raised by Defendant is whether professional negligence and negligent misrepresentation claims survive the death of the original holder of legal title. *See* 14 V.S.A. § 1451. The survival of causes statute provides "damages done to real or personal estate shall survive…" *Id.* The Vermont Supreme Court ruled the language of a predecessor statute "should be construed… liberally." *Dana v. Lull*, 21 Vt. 383, 390 (1849). Defendant cites *Jones v. Ellis' Estate* to demonstrate fraud does not survive the death of the original title holder. 68 Vt. 544, 547 (1896). Plaintiff's claims are professional negligence and negligent misrepresentation and not fraud. These are not the same torts. Accordingly, the Court liberally interprets 14 V.S.A. § 1451 and allows causes of action to survive transfer.

3. Assignment of Claims and Vermont Public Policy

Defendant next argues allowing assignment of professional negligence related claims violates public policy. For example, New Jersey courts forbid the assignment of tort claims before judgment. *See Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*¸ 124 F.3d 487, 490 (3d. Cir. 1997). Plaintiff admits a minority of jurisdictions follow its arguments. *See Sprint Commc'ns Co. v. APCC Servs. Inc.*, 554 U.S. 269, 273–86 (2008) (discussing the history of claim assignments). As described by Justice Breyer, there is not a general public policy against allow assignment of claims. *See id*. The Court will not prohibit the assignment of claims as a general matter, but will consider reasons for banning the assignment of specific claims.

Defendant's justifications for banning the assignment of tort claims in this case are unpersuasive. Defendant asserts there is a risk of collusion because the terminated companies had no reason to dispute liability or damages. Although collusion may eventually be a concern, it raises factual questions that the Court will not decide on a motion to dismiss. *See Bock*, 2008 VT 81, ¶ 4 (discussing the standard of review on motions to dismiss).

Defendant also asserts that because some states prevent the transfer of legal malpractice claims, the Court should ban the assignment of all professional malpractice claims. *See, e.g.*, *Del. CWC Liquidation Corp. v. Martin*, 584 S.E.2d 473, 479 (W.Va. 2003) (barring the assignment of a legal malpractice claim). The comparison is unpersuasive because the justification for barring

4

assignment for legal malpractice claim is based on the fiduciary duties owed by an attorney. *See id.* Environmental consultants do not owe fiduciary duties on par with the duties of attorneys. In this case, there is no specific reason to ban the assignment.

4.  Professional Services and the Economic Loss Rule

Finally, Defendant asserts the economic loss rule blocks Plaintiff's claims for negligent misrepresentation and professional negligence. "The economic-loss rule prohibits recovery in tort for purely economic losses." *EBWS, LLC v. Britly Corp.*, 2007 VT 37, ¶ 30, 181 Vt. 513. Nevertheless, "[p]urely economic losses may be recoverable in professional services cases because the parties have a special relationship, which creates a duty of care independent of contractual obligations." *Id.* ¶ 31. The court reasoned the type of relationship determines whether the professional services exception to the economic loss rule applies. *Id.*

Although no Vermont cases address whether environmental consultants fall under the professional services exception, a few cases provide examples. *EBWS* held that construction contractors do not fall under professional services. *Id.* at ¶ 32. *Lamell Lumber Corp v. Newstress International Inc.* found a specialized kiln manufacture provided professional services. 2007 VT 83, ¶ 16, 182 Vt. 282. *Lamell* also characterized a previous case involving an architect as a professional services case. *See id.*; *see also Howard v. Usiak*, 172 Vt. 227, 230, 237 (2001) (suit against architect). The court also distinguished a construction contractor from "an engineer, architect or other professional" while discussing the professional services exception. *See Long Trail House Condo. Ass'n v. Engelberth Const., Inc.*, 2012 VT 80, ¶ 22. From that distinction, the Court infers architects and engineers qualify under the professional services exception.

Under these circumstances, the Court cannot rule environmental consultants are outside of the professional services exception. The Court requires facts to make this decision. As suggested in *Long Trail House*, architects and engineers are within the exception. *See id.* The Court would require facts relating to the practices of environmental engineers and information about the specific practices of ECS. The Court cannot decide whether environmental consultants fall within the professional services exception on the basis of this motion to dismiss alone. *See Bock*, 2008 VT 81, ¶ 4.

The Court must deny Defendant's motion to dismiss. At least for a motion to dismiss, Defendant has well pleaded claims for assigned professional negligence, negligent misrepresentation, and breach of contract. *See id.* Nothing in this order changes the Court's August 30, 2012 order on Defendant's motion to dismiss.

5.  Plaintiff's Motion to File a Surreply

Defendant also argues the Court should deny Plaintiff's motion to file a surreply because it raises no new legal issues. Vermont case law on when to allow surreplies is relatively undeveloped. *See e.g., Needham v. Coordinated Apparel Grp., Inc.,* 174 Vt. 263, 265 n.1 (2002); *Colchester v. Vt. Dep't of Taxes*, Nos. S0861-10 CnC, S0933-10 CnC, S1524-10, CnC, 2011 WL 8472917 (Vt. Super. Ct. Aug. 24, 2011); *In re: Appeal of Colchester*, No. S0933-10 CnC, 2011 WL 346535 (Vt. Super. Ct. Jan. 28, 2011). Judge Toor faced an opposition to a surreply because

it was not accompanied by a motion and recited cumulative arguments. *Colchester*, 2011 WL 8472917, n.4. The court found neither "of those arguments as a reason to disregard the surreply." *Id.* In a separate case, the court allowed a surreply to clarify the arguments and considered the response to the surreply. *In re: Appeal of Colchester*, 2011 WL 346535.

The Court allows the Plaintiff's surreply and Defendant's response to the surreply to the extent it is helpful in clarifying the arguments. *See id.* In particular, the Court found the discussion of the Vermont survival of causes statute to be helpful and not duplicative of the arguments in the earlier filings. Accordingly, the Court grants the motion to file a surreply.

## **Order**

The Court ***denies*** Defendant's Motion to Dismiss.  The Court ***grants*** Plaintiff's motion to file a surreply.

Dated at Newfane, Vermont on February,    2013

_____
Karen R. Carroll
Superior Court Judge